# Exhibit B

Dockets.Justia.com

Slip Copy                                                                      Page 1
Slip Copy, 2009 WL 839117 (N.D.Cal.)
**(Cite as: 2009 WL 839117 (N.D.Cal.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, N.D. California,
San Jose Division.
Steve **TRACHSEL** et al., Plaintiffs,
v.
Ronald **BUCHHOLZ** et al., Defendants.
**No. C-08-02248 RMW.**

March 30, 2009.

West KeySummary
**Attachment 44 ⚷102**

44 Attachment
　44III Proceedings to Procure
　　44III(B) Affidavits
　　　44k102 k. Averments as to Cause of Action. Most Cited Cases
Investors were not entitled to a writ of attachment on the ground that they could not establish the probable validity of the underlying rescission claim. The investors alleged that an investment company illegally offered or sold them an unqualified security. The company asserted project sales were exempt from the state registration requirement because sales were made to less than 35 persons. Once family members of counted purchasers and accredited investors were properly excluded from the final purchaser count, the statutory requirement for registration was not met. Therefore, as the probable validity of the claim could not be established, attachment was not appropriate. Cal.Code Civ. Proc. § 482.010, et seq.; Fed.Rules Civ.Proc.Rule 64, 28 U.S.C.A.

Jesshill E. Love, Todd Andrew Roberts, for Plaintiff.

Michael George Descalso, Andrew A. August, Meagen Eileen Leary, Kevin Francis Rooney, William W. Schofield, for Defendants.

ORDER DENYING APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR WRIT OF ATTACHMENT

RONALD M. WHYTE, District Judge.

**\*1** The instant action arises out of an alleged unlawful real estate scheme promoted by two groups of defendants: 1) Ronald Buchholz, Charice Fisher, RDB Development, LLC and Solomon Capital, LLC ("the Buchholz defendants" or "defendants"); and 2) Jonathon Vento, Grace Capital, LLC, Grace Capital dba Grace Communities, Donald Zeleznak, and Z-Loft LLC ("the Grace defendants"). On June 3, 2008 plaintiffs filed an application for a right to attach order and an order for writ of attachment after hearing. After an initial hearing the parties stipulated to take additional discovery and submit supplemental briefing. After a second hearing the court requested additional briefing and supplementary evidentiary support. For the reasons stated below, the court denies the application for a right to attach order.

**I. BACKGROUND**

Plaintiffs are investors in an investment opportunity offered by Solomon Capital, Solomon Towers, LLC, a high-rise condominium investment ("Solomon Towers project"). Defendant Ronald Buchholz is the president of Solomon Capital and defendant Charice Fisher, his sister, is its CFO.

Plaintiffs allege that in February 2005, the Solomon Towers project was presented to them as an investment opportunity. Compl. ¶ 44. Buchholz and Fisher sent out an email to "a limited number of business associates, family members, and persons who had invested in prior opportunities sponsored by Solomon Capital, Inc. or its predecessor, Equity Investments, Inc." inviting them to a dinner event at which an investment in Buchholz and Fischer's

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

"newest project" would be presented. Decl. Charice Fischer Opp'n RTAO ("Fischer Decl.") ¶ 6.a. Approximately 30 people attended the February 3, 2005 event and each was required to sign a Confidentiality Agreement stating that he or she would not disclose the evaluation material distributed at that meeting to any third parties. *Id.*

As part of the Solomon Towers project, the Buchholz defendants were to purchase land in downtown Phoenix, Arizona using investors' funds, then develop the land into upscale condominiums, with investors eventually receiving return on the sale of the condominiums. Decl. Steve Trachsel Supp. RTAO ("Trachsel Decl.") ¶ 3. The presentation given to investors was a PowerPoint presentation and was accompanied by "pro forma" financial statements. Compl. ¶¶ 44-45. Investors were allegedly not provided with a private placement memorandum at the presentation or thereafter.

In March 2005, plaintiffs and other investors executed an Operating Agreement with Solomon Towers, LLC. The Operating Agreement includes 18 initial members, including natural persons and incorporated entities, who contributed a total of $4,169,400.00. *Id.* ¶ 47, Ex. C. Together with loans set forth in the Operating Agreement, the total investment in the Solomon Towers project is allegedly $5,100,000.00.

In July 2002, a company owned by defendant Donald Zeleznak purchased property at 625-643 N. 2nd Avenue, Phoenix, Arizona ("the Property") for $14.00 per square foot. Trachsel Decl. ¶ 4. In April 2005, defendant Zeleznak and Vento sold the Property to Solomon Towers at $178.75 per square foot. *Id.* The Buchholz defendants paid for the Property using the investment funds contributed by investors. Zeleznak received a commission of $1,000,000 for the sale. According to plaintiffs, the actual market rate for comparable land was $33.19 per square foot and Zeleznak's commission of approximately 20% of the sale price was well above the prevailing commission rate of 5-6%.

**\*2** To date the Solomon Towers project has not been built and plaintiffs allege that the financial statement disseminated by the Buchholz defendants on February 29, 2008 indicate that the project is in severe financial distress and overleveraged in an amount in excess of $2,400,000. *Id.* ¶ 5. Plaintiffs allege that defendants have not applied the investment funds toward the development of the Property but have divided the investment funds among themselves and left the investors holding the overleveraged property. They refer to this as a "pump and dump" scheme. Plaintiffs claim to have learned of defendants' fraudulent scheme after July 2007, when authorities raided Solomon Capital's San Jose offices due to allegations of fraudulent investment schemes. *Id.* ¶ 6.

On April 30, 2008, plaintiffs filed a complaint against numerous individuals and companies involved in Solomon Capital, Inc., and the transactions surrounding the Solomon Towers project for RICO violations, federal securities violations, breach of fiduciary duty, breach of contract, negligent and intentional misrepresentation, conspiracy, fraud and violation of Cal. Bus & Prof.Code § 17200. Plaintiffs also seek damages and rescission of sale under California securities laws, specifically Cal. Corp.Code §§ 25102, 25110, 25501, 25503, 25401, and 25504.

On June 3, 2008, plaintiffs, filed an application for a right to attach order and an order for issuance of writ of attachment after hearing ("RTAO"). After the court denied plaintiffs' motion for a temporary restraining order, the hearing on plaintiffs' application was continued by the court and then pursuant to the parties' stipulation to August 8, 2008. Plaintiffs seek a writ of attachment to attach personal and real property of defendants Buchholz and Fisher and the corporate property of defendants RDB Development and Solomon Capital, Inc. up to the amount of $1,000,000. At an August 8, 2008

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

hearing, the parties stipulated to take limited discovery regarding plaintiffs' application for a writ of attachment. The parties later stipulated to schedule the writ-of-attachment hearing for February 13, 2009.

At the hearing the parties agreed to submit additional five-page briefs on the statute of limitations issue. The court also requested at the same hearing that defendants file additional documentary support for their contention that certain investors were accredited under 17 C.F.R. § 230.501(a)(5)-(6). Defendants later filed the requested documentary support under seal.

## II. ANALYSIS

### A. Legal Standard for Attachment

Plaintiffs rely on California law as made applicable under Federal Rule of Civil Procedure 64. Under Rule 64, state law provides all remedies when property is to be seized for the purpose of securing satisfaction of a judgment, unless a federal statute governs. The California Attachment Law, Cal.Code Civ. Proc. § 482.010, *et seq.,* which the parties agree applies to plaintiffs' application, is subject to strict construction. *Epstein v. Abrams,* 57 Cal.App.4th 1159, 1167-68, 67 Cal.Rptr.2d 555 (1997).

**\*3** "Under Code of Civil Procedure section 483.010, a prejudgment attachment may issue only if the claim sued upon is (1) a claim for money based upon a contract, express or implied; (2) of a fixed or readily ascertainable amount not less than $500; (3) either unsecured or secured by personal property, not real property (including fixtures); and (4) commercial in nature." *Goldstein v. Barak Const.,* 164 Cal.App.4th 845, 79 Cal.Rptr.3d 603, 608 (Cal.App.2008); Cal.Code Civ. Proc. § 485.210. The court must make the following findings as a predicate for issuing a right to attach or-

der:

(1) The claim upon which the attachment is based is one upon which an attachment may be issued.

(2) The plaintiff has established the probable validity of the claim upon which the attachment is based.

(3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.

(4) The amount to be secured by the attachment is greater than zero.

Cal.Code Civ. Proc. § 484.090(a)."The application shall be supported by an affidavit showing that the plaintiff on the facts presented would be entitled to a judgment on the claim upon which the attachment is based."*Id.* § 484.030. To oppose a right to attach order, a defendant must give notice of his objection "accompanied by an affidavit supporting any factual issues raised and points and authorities supporting any legal issues raised."Cal.Code Civ. Proc. § 484.060(a).

As set forth above, plaintiffs must establish "the probable validity of the claim upon which the attachment is based."Cal.Code Civ. Proc. § 484.090(a)(2); *see also Bank of America v. Salinas Nissan, Inc.,* 207 Cal.App.3d 260, 271, 254 Cal.Rptr. 748 (1989)."A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim ."Cal.Code Civ. Proc. § 481.190; *see also Kemp Bros. Construction, Inc. v. Titan Electric Corp.,* 146 Cal.App.4th 1474, 1476, 53 Cal.Rptr.3d 673 (2007).Cal.Code Civ. Proc. § 484.050(b) sets forth the requirements for a hearing on an application for a writ of attachment:

The order will be issued if the court finds that the plaintiff's claim is probably valid and the other requirements for issuing the order are established.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 839117 (N.D.Cal.)
**(Cite as: 2009 WL 839117 (N.D.Cal.))**

The hearing is not for the purpose of determining whether the claim is actually valid. The determination of the actual validity of the claim will be made in subsequent proceedings in the action and will not be affected by the decisions at the hearing on the application for the order.

The court's determinations are to be made upon the basis of the pleadings and other papers in the record. *Goldstein,* 79 Cal.Rptr.3d at 609 (citing Cal.Code Civ. Proc. § 484.090(d)).

**B. Attachment Based on Violation of Cal. Corp.Code § 25503**

In their application for writ of attachment filed on June 3, 2008, plaintiffs contend that they can demonstrate "the probable validity" of their rescission claim under Cal. Corp.Code § 25503 based on defendants' alleged violation of Cal. Corp.Code § 25110. In their original reply, and in their supplemental briefing on the statute-of-limitations issue, plaintiffs further argue that they can demonstrate the probable validity of their RICO, fraud, securities fraud, intentional misrepresentation, negligent misrepresentation and Cal. Corp.Code § 25401 claims. The Buchholz defendants move to strike the portions of the reply concerning the probable validity of any claim other than the rescission claim based on Cal. Corp.Code § 25110, contending that plaintiffs have improperly argued new material on reply. *See* Defs.' Mot. Strike Portions of Reply Br. at 2;

**\*4** As the court suggested at the August 8, 2008 hearing, the court agrees that plaintiffs' arguments regarding their claims other than the rescission claim based on Cal. Corp.Code § 25110 are raised for the first time on reply. Notwithstanding plaintiffs' contention that their proposed right to attach order was based on their demonstration of the probable validity of their rescission claims, "as well as other claims set forth in the complaint," their ap-

plication raised only arguments pertaining to that rescission claims. *See* Appl. for Right to Attach Order at 6 ("Among the numerous claims pled in Plaintiffs' complaint is one for rescission and return of funds under the California Corporations Code. Because this claim is one for a readily ascertainable sum of money based on an operating agreement with Defendants, attachment may be issued on the present claim."). Although plaintiffs ask the court to exercise its discretion to consider their additional claims because defendants "should have known" that plaintiffs based their application for writ of attachment upon them as well as their recession claim, the court will not consider arguments raised for the first time on reply. Accordingly, the court will strike plaintiffs' arguments pertaining to their RICO claims, Reply at 2:18-3:11; fraud and securities fraud claims, *id.* at 3:12-4:22, 79 Cal.Rptr.3d 603; breach of fiduciary duty and breach of contract, *id.* at 4:23-5:17, 79 Cal.Rptr.3d 603; unfair business practices claim, *id.* at 4:18-6:6, 79 Cal.Rptr.3d 603; and conspiracy claims, *id.* at 6:6-6:6, 79 Cal.Rptr.3d 603.

As an initial matter, the court examines whether a writ of attachment may be based upon a violation of Cal. Corp.Code § 25503. This section provides that

[a]ny person who violates Section 25110... shall be liable to any person acquiring from him the security sold in violation of such section, who may sue to [1] recover the consideration he paid for such security with interest thereon at the legal rate, less the amount of any income received therefrom, upon the tender of such security, or [2] for damages, if he no longer owns the security, or if the consideration given for the security is not capable of being returned.

*Id.* (numbering added). Rescission is an alternative to the remedy of damages. Nevertheless, "the rule is established upon well-considered authority that, if upon the examination of the complaint the gravamen of the action forces the conclusion that it is an

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 839117 (N.D.Cal.)
**(Cite as: 2009 WL 839117 (N.D.Cal.))**

action for the recovery of a specific sum of money upon a contract, express or implied, an attachment will issue regardless of the fact that the exercise of equitable powers of the court are also incidentally involved. *Bennett v. Superior Court in and for Los Angeles County,* 218 Cal. 153, 161, 21 P.2d 946 (1933). In *Bennett,* the suit was "upon a contract, so far as the right of attachment is concerned, for the return of a specific sum of money by reason of failure of consideration."*Id.* Accordingly, it would appear that a writ of attachment may be based upon a claim for rescission under Cal. Corp.Code § 25503 as the sum of money to be returned to plaintiffs should they prevail is ascertainable based upon the amount invested and the "interest at the legal rate, less the amount of any income received therefrom."FN1

> FN1.Cal. Corp.Code § 25503 also provides for damages: "Damages, if the consideration given for the security is not capable of being returned, shall be equal to the value of that consideration plus interest at the legal rate from the date of purchase, provided the security is tendered."However, plaintiffs do not contend that they base their Attachment Application on this remedy.

**C. Plaintiffs' Rescission Claim**

**\*5** Next, the question becomes whether plaintiffs have shown that on the facts presented in their affidavit they would be entitled to a judgment on the claim upon which the attachment is based. As set forth above, at this point, the court need not determine whether the claim is actually valid, only that it is probably valid. Cal.Code Civ. Proc. § 484.050(b).

Plaintiffs' rescission claim is based on Cal. Corp.Code § 25110, which makes it unlawful to offer or sell an unqualified security in the state unless the security is exempt. The determination of whether a particular instrument constitutes a security under Cal. Corp.Code § 25019 is a matter of law and must be made on an ad hoc basis upon a review of the surrounding facts and circumstances and in light of the regulatory purposes to be served under the Corporate Securities Law, Cal. Corp.Code, § 25000 *et seq. Leyva v. Superior Court,* 164 Cal.App.3d 462, 470, 210 Cal.Rptr. 545 (1985). Here, plaintiffs assert, and defendants do not dispute, that the investment in the condominium project constitutes a security for purposes of California securities law. Under Cal. Corp.Code § 25019 the definition of "security" includes an "investment contract." The broad definition of security under statutes such as Cal. Corp.Code § 25019"is designed to embrace speculative schemes to attract risk capital, no matter how ingeniously designed, and the courts will look through form to substance to achieve this end." *Sarmento v. Arbax Packing Co.,* 231 Cal.App.2d 421, 424, 41 Cal.Rptr. 869 (1964) (discussing prior statute); *see also Silver Hills Country Club v. Sobieski,* 55 Cal.2d 811, 814, 13 Cal.Rptr. 186, 361 P.2d 906 (1961) (the purpose of the law is "to protect the public against spurious schemes, however ingeniously devised, to attract risk capital.")."For the purpose of both the federal and the California securities law, an investment contract means a contract or transaction whereby a person invests money in a common enterprise with the expectation of deriving a profit solely from the efforts of a promoter or a third person." *People v. Coster,* 151 Cal.App.3d 1188, 1193, 199 Cal.Rptr. 253 (1984).

An investment in a condominium project such as the one presented in this action appears to qualify as a security under California law. Because an investment contract such as this will not likely involve the active participation of investors, but merely rely on the developer's skill, it falls within the qualifications of *Coster.*Also, treating an investment contract for a condominium project as a se-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

curity is consistent with the intent of the statute to "protect the public against spurious schemes" since the investment and corollary risk of injury is very large. *See, e.g., Sobieski,* 55 Cal.2d at 814, 13 Cal.Rptr. 186, 361 P.2d 906.

As set forth above, Cal. Corp.Code § 25110 makes it unlawful to offer or sell an unqualified security in the state "unless such security or transaction is exempted or not subject to qualification under Chapter 1."*Id.*Defendants do not effectively claim that the interests in question had been registered or otherwise qualified. Defendants do, however, assert that the Solomon Towers project was a private offering and falls under Cal. Corp.Code § 25102(f), which sets forth transactions that are exempted from Cal. Corp.Code § 25110. Cal. Corp.Code § 25102(f) provides that registration is not required if (1) the sales "are not made to more than 35 persons"; (2) all purchasers either had a preexisting business relationship with the issuer or "could be reasonably assumed to have the capacity to protect their own interests in connection with the transaction"; (3) each purchaser represents that he or she is purchasing for the purchaser's own account; and (4) the offer and sale of the security is not accomplished by the publication of any advertisement." *Id.* (f)(1)-(4). The burden of proving a "nonpublic" transaction is on the party claiming the exemption. *People v. Graham,* 163 Cal.App.3d 1159, 1170 n. 14, 210 Cal.Rptr. 318 (1985); *see also*Cal. Corp.Code § 25163 ("In any proceeding under this law, the burden of proving an exemption or an exception from a definition is upon the person claiming it."). Plaintiffs now do not contest that the second, third, and fourth requirements are satisfied. *See* Pls.' Suppl. Briefing ISO RTAO 1-2. Therefore, the only remaining issue is whether, under § 25012(f)(1), sales were made to more than 35 persons.

**\*6** Plaintiffs contend first that § 25102(f)(1) applies to both sales and offers for sale, and that the Solomon Towers investment was offered to over 40 people. Second, plaintiffs argue that, including persons, debt investors, and members of organizations created specifically for the investment, the Solomon Towers Project was sold to more than 35 people. Defendants respond that the statute does not apply to offers for sale, and that, properly counted, sales were made to no more than 22 people. In particular, defendants argue that plaintiffs fail to exclude family members of counted purchasers and accredited investors from the final purchaser count.

**1. Does § 25102(f)(1) apply to offers for sale?**

Plaintiffs argue that the requirement under § 25102 that exempt transactions not involve "sale of the security [to] more than 35 persons ..." requires that the security also not be offered to more than 35 persons. The cases plaintiffs cites each interpret an earlier version of the Corporations Code, and thus are ill-applied to the present statute. *See Sherman v. Lloyd* 181 Cal.App.3d 693, 700, 226 Cal.Rptr. 495 (1986) (Noting that the statute was "amended in significant regard" on November 1, 1981).

The present statute draws clear lines between sales and offers for sale. §§ 25102(a), (b), and (c), for example, apply to certain kinds of offers, but not sales. By comparison, §§ 25102(e)-(i) each apply broadly to the "offer or sale" of various instruments. Finally, § 25102(h)(1) applies to the "offer and sale" of stock. It is clear from these provisions that the drafters of § 25102 understood how to distinguish between sales and offers. § 25102(f) (1)'s requirement that an exempt transaction not be sold to more than 35 persons, therefore, applies to purchasers but not offerees.

**2. Accredited Investors**

The California Code of Regulations provides that "[f]or the purposes of [§ ] 25102(f) of the Code, the following purchasers are excluded from the count of purchasers for purposes of Subparagraph (1): ...

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(g) A person who comes within one of the categories of an "accredited investor" in Rule 501(a) of Regulation D adopted by the Securities and Exchange Commission under the Securities Act of 1933 (17 CFR [§ ] 230.501(a))."Cal. Admin. Code tit. 10, § 260.102.13. The cited SEC regulations provide that "Accredited investor shall mean any person who comes within any of the following categories, or who the issuer reasonably believes comes within any of the following categories," including: 1) natural persons with a net worth (individual or joint with spouse) exceeding $1,000,000; and 2) natural persons who had an individual income in excess of $200,000 in each of the two most recent years ($300,000 if joint with spouse) and has a reasonable expectation of reaching the same income level in the current year. 17 C.F.R. § 230.501(a)(5)-(6). The court agrees that, pursuant to these regulations, accredited investors should therefore not be counted as purchasers under § 25102(f)(1).

### 3. Counting by Investment

**\*7** Plaintiffs argue that persons who purchase a particular security multiple times (e.g., through different IRA accounts) should be counted once for each investment. In support of this proposition, they offer *Clemens v. Franchise Tax Bd.,* 172 Cal.App.2d 446, 448, 341 P.2d 838 (1959), which states that "for tax purposes, the trust and beneficiary are regarded as separate and distinct legal entities."That case bears scant relation to whether a person who invests in a security through three IRA accounts should be counted as three persons under § 25102(f)(1). The statute clearly distinguishes between natural and legal persons in its counting rules. In § 25102(f)(4), for example, the code states that managers and directors of LLCs should not be included in the count under (f)(1). The court will therefore not count a natural person twice without a more explicit statutory command. Each person shall be counted once, despite that they invested through

multiple accounts.

### 4. The Final Count

Defendants' counsel William Schofield includes in his declaration regarding accredited investor status a set of tables setting forth defendants proposed final count of the investors in Solomon Towers, LLC. Decl. of William Schofield Re: Accredited Investor Status 3-5 (hereinafter "Schofield Decl. Re: Acc. Inv."). Mr. Schofield counts as accredited investors only those who have been verified with evidence sufficient to conclude that the above SEC requirements are satisfied, and the court will here do the same. Counting a particular investor toward the final count does not imply that they are not accredited, only that their accredited status is not sufficiently well established.

According to that table, nine direct investors in Solomon Towers should be counted of the thirty-one that plaintiffs propose. *Id.* The court has considered the basis for each accredited investor's status, and finds that, on the basis of the provided documents, a total of ten (not nine) investors should be credited to the final count. In support of the accredited-investor status of Roland Lee ("Lee"), defendants offer only the Second Declaration of Charice Fisher, which states that "I am aware though my personal or professional association, and through financial questionnaires used in connection with this and previous investments" that Lee qualified as an accredited investor. Second Declaration of Charice Fischer in Opp'n to Pls.' Mot. for Right to Attach Order ¶ 8 (hereinafter "Fischer Decl.2d"). This declaration fails to meet the SEC regulation's requirements. Fisher's first declaration did not attach the questionnaires, attest to their content, or reproduce the personal conversations that serve as the purported basis for the her testimony. Without more her declaration does not establish that the attested-to investors qualified as accredited, or that Fischer reasonably believed that they would.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Next, Schofield's declaration states that two of the four members of David Towers, LLC are accredited investors, and therefore should not be counted. The Declaration of Roland Lee filed in opposition to plaintiffs' application for a right to attach order is similar in content to the declaration of Charice Fisher described above. The court therefore finds that all four members of David Towers, LLC should be credited toward the final count.

**\*8** The court finds that the supplemental declaration of Jan Edbrooke establishes that eight of the 24 investors in Daystream, LLC should be credited toward the final count. Additionally, eleven investors from Sun Towers, LLC and Tower Capital Partners, LLC should be included, because their accredited status is unknown.

The court finds on the basis of the above described evidence that a maximum of thirty-three non-accredited investors purchased shares in Solomon Towers, LLC. Therefore, the investment in Solomon Towers qualifies as exempt under Cal. Corp.Code § 25102(f) and Cal. Corp.Code § 25110. This finding is for the purposes of this application for a right to attach order and has no binding effect. Plaintiffs' application for a right to attach order is therefore denied.

### III. ORDER

For the reasons stated above, the court denies plaintiffs' application for a right to attach order.

N.D.Cal.,2009.
Trachsel v. Buchholz
Slip Copy, 2009 WL 839117 (N.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.