**EXHIBIT D**

Westlaw

Not Reported in F.Supp.2d                                                                                     Page 1
Not Reported in F.Supp.2d, 2008 WL 251977 (S.D.Cal.)
 **(Cite as: 2008 WL 251977 (S.D.Cal.))**

**C**Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
DAW INDUSTRIES, INC., a California corporation,
Plaintiff,
v.
PROTEOR HOLDINGS, S.A., a French company;
Proteor, S.A., a French company and Etablissements
Proteor, a French company, Defendants.
**No. 07cv1381 IEG (RBB).**

Jan. 29, 2008.

Edward J. McIntyre, Solomon Ward Seidenwurm &
Smith, LLP, San Diego, CA, Peter C. Schechter, Ed-
wards Angell Palmer & Dodge, LLP, New York, NY,
for Plaintiff.

Donald G. Rez, Sullivan Hill Lewin Rez and Engel,
San Diego, CA, Paul J. Esatto, Jr., Scully Scott Mur-
phy and Presser, Garden City, NY, for Defendants.

**ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS**

IRMA E. GONZALEZ, Chief Judge.

**\*1** Presently before the Court is Defendant's [FN1] Mo-
tion to Dismiss Plaintiff's Complaint. For the follow-
ing reasons, the Court GRANTS the motion.

> FN1. Defendants are related companies;
> Proteor Holdings, S.A. owns and controls
> Proteor, S.A. and Etablissements Proteor is
> an entity related to Proteor Holding S.A. and
> Proteor S.A. Accordingly the Court refers to
> these multiple Defendants as a single De-
> fendant entity.

***BACKGROUND***

**A. Factual Background**

The "incorporation by reference" doctrine permits
district courts to consider, in connection with a mo-
tion to dismiss, documents whose contents are al-
leged in the Complaint and whose authenticity no
party questions, but which are not physically attached
to plaintiff's pleading. In re Seracare Life Sciences,
Inc., 2007 WL 935583, *4 (S.D.Cal. March 19, 2007)
(citing In re Silicon Graphics Inc. Securities Litiga-
tion, 183 F.3d 970, 986 (9th Cir.1999)); see also
Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994)
(holding that documents not physically attached to
the complaint may nonetheless be considered by the
court on a 12(b) (6) motion to dismiss if the com-
plaint refers to such documents, the documents are
"central" to plaintiff's claim, and no party questions
the authenticity of the copy attached to the 12(b)(6)
motion).

In this case, the Complaint makes reference to a letter
dated June 4, 2007 (D's Mem. ISO Motion, Ex. G), a
letter dated July 25, 2007 (D's Mem. ISO Motion, Ex.
H), and a contract executed September 2005 (D's
Mem. ISO Motion, Ex. B). Neither the letters nor the
contract were physically attached to the Complaint
but these documents have been offered as exhibits to
Defendant's Motion to Dismiss and neither party
challenges the authenticity of the documents. Thus, in
addition to the Complaint, the Court looks to these
documents in its recount of the factual background.

Defendant claims ownership of United States patent
6,869,560 ("the '560 patent") which is directed to a
process for manufacturing a flexible sleeve for a
prosthesis or an orthopedic appliance made with,
among other materials, polyolefin foam. (Compl. ¶
14; Def. Mem ISO Mot., Ex. H.) Plaintiff and Defen-
dant have had a business relationship for many years,
with Plaintiff serving as the exclusive distributor of
Defendant's products from January 1, 1987 until
March 31, 2006. (Def. Mem. ISO Mot., Ex. B.) More
recently, after a legal dispute that is unrelated to this
case, the two companies entered into a settlement
agreement, signed in September of 2005, which pro-
vides a basis for a continued distribution agreement
on a non-exclusive basis:

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case5:09-cv-01531-RS    Document26-4    Filed08/12/09    Page3 of 8

Not Reported in F.Supp.2d                                                                          Page 2
Not Reported in F.Supp.2d, 2008 WL 251977 (S.D.Cal.)
**(Cite as: 2008 WL 251977 (S.D.Cal.))**

3.8 After March 31, 2006, [Defendant] will continue to sell [Defendant] products to [Plaintiff] on a non-exclusive basis at the current terms and conditions that [Defendant] currently sells its products to [Plaintiff], in order that [Plaintiff] may continue to provide after-sales service, support and warrant to its clients who had purchased [Defendant] products from [Plaintiff] before March 31, 2006.

(See *id.*)

Sometime in 2007, Defendant became aware that Plaintiff, in addition to distributing and selling certain flexible sleeves manufactured and supplied by Defendant, was also distributing and selling a similar product under the EVERFLEX brand name. In a July 25, 2007 letter, Defendant accused Plaintiff of infringing Defendant's '560 patent through the sale of the EVERFLEX product. (Def. Mem. ISO Mot., Ex. H.) The basis for Defendant's claim was the result of tests performed by Defendant on the EVERFLEX material which revealed the product was made using the material mentioned in the Defendant's '560 patent: polyolefin foam.[FN2] Two days after receiving this letter from Defendant, on July 27, 2007, Plaintiff filed the instant lawsuit.

> FN2.Patent '560 covers the method steps for forming a flexible sleeve or liner using a flexible thermoformable preform made from material "selected from the materials consisting of a *polyolefin foam,* an ethylene-vinyle acetate foam by themselves or a blend of said materials with other thermoformable materials."Proteor's tests on EVERFLEX revealed that it contained polyolefin.

*2 The Complaint asserts Defendant has alleged Plaintiff infringes the ' 560 patent "without having provided sufficiently specific facts to support the allegation" and further asserts Plaintiff "does not have sufficient information to know that it infringes the '560 patent, and accordingly denies [Defendant's] allegations that it infringes the '560 patent."Plaintiff goes on to allege that "on information and belief and after a reasonable opportunity for further investigation and discovery, [Plaintiff] believes that the '560 patent is invalid."(Compl. at ¶ 16.)

In addition, the Complaint also alleges Defendant has engaged in a scheme to fix prices in interstate commerce in the United States for its "Keasy" product,[FN3] in violation of the United States antitrust laws. (Compl. at ¶ 17.) The Complaint alleges this scheme is evidenced by a June 4, 2007 letter.(*Id.* (referencing Def. Mem ISO Mot., Ex. G).) In that letter, Defendant informs Plaintiff that it needs to reduce the purchasing discount that Plaintiff, as a distributor, receives for certain products trading under the name "Keasy." The letter also states Defendant recommends all resellers avoid price battles and threatens action if one distributor prices Defendant's products much lower than other distributors. (See *id.*)The Complaint goes on to allege Defendant is using the '560 patent as an anti-competitive device. (Compl.¶ 19.)

> FN3. The Complaint makes no mention as to whether the "Keasy" product line includes all, some, or none of the products covered by the '560 patent.

Finally, the Complaint references the September 2005 settlement agreement, alleging it contains a provision which mandates Defendant sell products to Plaintiff. It also alleges Plaintiff has placed orders with Defendant for the Keasy product and that, in violation of the agreement, Defendant has refused to sell the Keasy product to Plaintiff. (Compl.¶ 20-22.)

Based on these allegations, the Complaint asks for (1) a declaratory judgment concerning whether Plaintiff infringes the '560 patent and whether the patent is valid; (2) money damages and injunctive relief arising from Defendant's alleged violations of the antitrust laws; and (3) money damages for Defendant's breach of contract.

Defendant filed a motion to dismiss, arguing (1) Plaintiff's request for a declaratory judgement of non-infringement and invalidity should be dismissed because there is no actual controversy within the meaning of the Declaratory Judgment Act; (2) the antitrust portion of the Complaint should be dismissed because it fails to allege enough specific facts to state a claim of relief; and (3) the breach of contract claim should be dismissed either because the Complaint

fails to properly allege breach.

**B. Procedural Background**

Plaintiff filed its Complaint against Defendant on July 27, 2007. (Doc. No. 1.) Defendant filed a motion to dismiss on September 28, 2007, arguing Plaintiff's declaratory judgment claim does not satisfy the case and controversy requirement. (Doc. No. 7.) Defendant also asserts Plaintiff's Complaint fails to allege facts sufficient to support either the antitrust cause of action or the breach of contract claim. (*Id.*) Plaintiff filed an opposition on December 26, 2007. (Doc. No. 11.) Defendant filed a reply on January 7, 2008. (Doc. No. 12.) The Court held oral argument on January 14, 2008.

*LEGAL STANDARD*

**\*3** A motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. Proc. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir.2001). To survive a Rule 12(b)(6) motion, a complaint generally must satisfy only the minimal notice pleading requirements of Fed. R. Civ. Pro. 8(a)(2).[FN4] Porter v. Jones, 319 F.3d 483, 494 (9th Cir.2003). A court may dismiss a complaint for failure to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Navarro, 250 F.3d at 732 (citing *Conley* );see also Haddock v. Board of Dental Examiners, 777 F.2d 462, 464 (9th Cir.1985) (a court should not dismiss a complaint if it states a claim under any legal theory, even if plaintiff erroneously relies on a different theory). In other words, a Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988).

> FN4.Rule 8(a)(2) requires only that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2).

In deciding a motion to dismiss for failure to state a claim, the court's review is limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir.1996); Allarcom Pay Television, Ltd. v. General Instrument Corp., 69 F.3d 381, 385 (9th Cir.1995). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996); Mier v. Owens, 57 F.3d 747, 750 (9th Cir.1995) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Furthermore, a court is not required to credit conclusory legal allegations cast in the form of factual allegations, unwarranted deductions of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).

A court may dismiss a complaint without granting leave to amend only if it appears with certainty that the plaintiff cannot state a claim and any amendment would be futile. SeeFed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); DeSoto v. Yellow Freight Systems, Inc., 957 F.2d 655, 658 (9th Cir.1992); Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir.1988); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir.1986) ("leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").

*DISCUSSION*

**A. Declaratory Judgment Claim**

**\*4** Defendant argues the Complaint's statement that "[Plaintiff] does not have sufficient information to know that it infringes the '560 patent" does not reflect an actual controversy. Where one side asserts in-

fringement and the other ignorance, continues Defendant, the parties are not in justiciable disagreement. Defendant notes the Complaint makes it apparent Plaintiff did not conduct a pre-filing investigation to determine whether its EVERFLEX product falls within the scope of the claims of the '560 patent, specifically whether the EVERFLEX product is made of the materials mentioned in the '560 patent. With regard to the invalidity claim, Defendant asserts Plaintiff should have presented Defendant with some allegedly invalidating prior art as a basis for contending the patent is invalid and/or not infringed. Instead, Plaintiff's allegations of invalidity seem to be purely speculative and do not establish that at the time of filing there was "a definite and concrete dispute".

Plaintiff points to the contents of the July 25, 2007 letter which (1) accused Plaintiff of infringing Defendant's '560 patent; (2) demanded that Plaintiff cease selling its allegedly infringing EVERFLEX product; (3) demanded Plaintiff destroy all EVER-FLEX inventory; and (4) cancelled orders in claimed retaliation for "[Plaintiff's] clear disregard for [Defendant's] patent rights."Plaintiff argues it simply took the letter seriously and thus filed suit where it was faced with the choice of pulling its product from the market or risking infringement litigation at any time and place of Defendant's choosing.

### i. Analysis

The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."28 U.S.C. § 2201(a). An important case interpreting the DJA is the Federal Circuit's decision in *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372 (Fed.Cir.2007). In that case, the Federal Circuit explained the appropriateness of declaratory judgment jurisdiction relies on some affirmative act by the patentee which casts legal doubt over conduct asserted to be legal by the declaratory judgment plaintiff:

Declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the

existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee. But Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or *abandoning that which he claims a right to do.*

We need not define the outer boundaries of declaratory judgment jurisdiction, ... [w]e hold only that where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and *where that party contends that it has the right to engage in the accused activity* without a license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

**\*5** *SanDisk Corp.,* 580 F.3d at 1381 (emphasis added).

The Court concludes Plaintiff's Complaint has not satisfied the requirements for declaratory judgment jurisdiction. Plaintiff's Complaint does not allege Plaintiff has "the right to engage in the accused activity," indeed, Plaintiff's Complaint does not allege the right to engage in any activity at all. Plaintiff's position is simply that it does not know whether or not it has infringed the Defendant's patent. While the July 2007 letter provides context to the dispute, implying Plaintiff asserts the right to continue it's manufacture and sale of the EVERFLEX product, this is insufficient to overcome the Complaint's unequivocal statement of ignorance regarding whether this activity constitutes infringement. In light of the language in *SanDisk* and Fed. Rule of Civ. P. 8(a)'s requirement of "a short and plain statement of the claim *showing that the pleader is entitled to relief,"* the absence of an allegation asserting the right to continue production of a potentially infringing product is fatal to a declaratory judgment action regarding infringement.[FN5]

> FN5. Plaintiff attempts to rely on a July 18, 2007, letter in which one of its executives asserted that Plaintiff "unequivocally disputes [Defendant's] accusations" as making

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

a clear statement of its belief that it is not infringing Defendant's patent. (Attached to Def's Motion as Exhibit F.) Because this document is not referenced in Plaintiff's Complaint, however, the Court does not consider it.

With regard to the request for a declaratory judgment of invalidity, while Plaintiff's Complaint takes a definitive position on this issue ("[Plaintiff] believes that the '560 patent is invalid."), Plaintiff has presented no factual allegations to support this legal conclusion and thus this claim should also be dismissed. Balistreri, 901 F.2d at 699 (Rule 12(b)(6) dismissal is proper where there is an absence of sufficient facts alleged under a cognizable legal theory).

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss the Plaintiff's Declaratory Judgment Claim.

**B. Antitrust Claim**

Defendant argues Plaintiff's Complaint fails to cite any facts which would establish a contract, combination, or conspiracy in violation of the antitrust laws. The Complaint only references a letter which reiterates a lawful resale price maintenance agreement. (Def. Mem ISO Mot., Ex. G.) Resale price maintenance is not an unlawful per se violation of the antitrust laws. Thus, Plaintiff should have made allegations concerning standing, how the restraint is unlawful, and the relevant market power, which it has not done. See Bahn v. NME Hosp., Inc., 929 F.2d 1404, 1410 (9th Cir.1991) (In order to establish a claim under Section 1 of the Sherman Act, a plaintiff must show: (1) a contract, combination, or conspiracy; (2) that the agreement unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis; (3) that the restraint affected interstate commerce). Further, to the extent Plaintiff's Complaint asserts claims based on fraud, Defendant argues Plaintiff has failed to identify the "who, what, when, where, and how of the alleged fraud." Garmin Ltd. v. Tomtom, Inc. ., 2007 WL 2903843 at *3 (E.D.Tx., 2007) (internal quotations omittted) (the heightened pleading requirements of Rule 9(b) apply to the fraud element of an antitrust claim brought under section 2 of the Sherman Act.)

*6 Plaintiffs counter by emphasizing the Supreme Court's recent reiteration that Federal Rule of Civil Procedure 8(a)(2) and its conclusion that a Complaint need only "give the defendant fair notice of what the ... claim and the grounds upon which it rests ."Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1995 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Plaintiff asserts it has pled enough facts to state a claim to relief that is plausible because it pleads the relevant product, EVERFLEX, and geographic market, the United States. (Compl.¶ 51.)

**i. Analysis**

In general, the procurement of a patent does not constitute an antitrust violation. See FMC Corp. v. Manitowok Co., 835 F.2d 1411, 1418 and n. 16 (Fed.Cir.1987). Nor is it a violation of the Sherman Act to bring a patent infringement action in good faith, even if it is ultimately determined in the litigation that the patent is invalid. See Atari Games Corp. v. Nintendo of America, Inc., 897 F.2d 1572, 1576 (Fed.Cir.1990). Exceptions exist where the patent is procured by fraud on the Patent Office, see Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), and where it is shown by clear and convincing evidence that the patent holder is enforcing the patent in bad faith, see Handgards, Inc. v. Ethicon, Inc., 601 F.2d 986, 993 (9th Cir.1979).

Plaintiff's Complaint makes the following allegations regarding the antitrust laws:

17. By a letter dated June 4, 2007, [Defendant] further evidenced its scheme, by common design, plan, agreement and conspiracy, to fix prices in interstate commerce in the United States for its Keasy product, in order to suppress competition in the marketing, sale and distribution of its Keasy product throughout the United States, in violation of United States anti-trust laws.

18. Upon information and belief, [Defendant] [has] retaliated against [Plaintiff] because [Plaintiff] refuses to participate in [Defendant's] illegal scheme

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 251977 (S.D.Cal.)
(Cite as: 2008 WL 251977 (S.D.Cal.))

to fix prices and [Defendant's] have refused to sell the Keasy product to Plaintiff

19. In addition, upon information and belief, [Defendant] [is] using the ' 560 patent as an anti-competitive device in violation of federal anti-trust law.

Noticeably absent from the Complaint are any allegations Defendant willfully failed to cite prior art to the patent office or any other fact tending to suggest Defendant knew its patent was invalid or otherwise committed fraud in the procurement of the patent.[FN6] In light of this deficiency, Plaintiff has failed to state a violation of the antitrust laws. Accordingly, the Defendant's Motion to Dismiss the Antitrust Claim is **GRANTED.**

> FN6. Plaintiff suggests Defendant has admitted in a August 24, 2007 email that it failed to cite prior art to the patent office. (Attached to Def's Motion as Exhibit L.) However, this alleged admission appears only in an exhibit to Defendant's Motion to Dismiss. It is not referenced in the Complaint and Plaintiff has cited no authority for the proposition that documents neither attached nor referenced in a complaint are properly considered in a motion to dismiss.

**III. Contract Claim**

Defendant argues the terms of the settlement agreement do not mandate Defendant sell to Plaintiff any of Defendant's products on an unconditional basis. Instead, the agreement provides Defendant's sale is provided "in order that [Plaintiff] may continue to provide after-sales service, support and warrant to its clients who had purchased [Defendant] products from [Plaintiff] before March 31, 2006."(Def. Mem. ISO Mot. Ex. B.) Accordingly, Defendant argues Plaintiff's breach of contract claim must allege Plaintiff ordered Defendant's products for the purpose of providing required services in order to survive dismissal.

**\*7** Plaintiff argues the Complaint sufficiently supports the breach of contract claim insofar as it alleges a contract (which was attached as an exhibit to De-

fendant's MTD), an alleged breach, and alleged damages.

**i. Analysis**

The relevant provision of the contract reads as follows:

3.8 After March 31, 2006, [Defendant] will continue to sell [Defendant's] products to [Plaintiff] on a non-exclusive basis at the current terms and conditions that [Defendant] currently sells its products to [Plaintiff], in order that [Plaintiff] may continue to provide after-sales service, support and warrant to its clients who had purchased [Defendant] products from [Plaintiff] before March 31, 2006.

(Def. Mem. ISO Mot., Ex. B, at 2.) The Complaint alleges this contract mandates Defendant sell Defendant's products to Plaintiff, including the Keasy product and that in violation of the agreement Defendant has refused to sell its products, including Keasy, to Plaintiff. Compl ¶ 20-22. However, as Defendant points out, there is no allegation of performance, or excuse for non-performance, on the part of the Plaintiff. While Defendant has cited cases observing that such an allegation is required to state a breach of contract claim, *see e.g., Mark Kravis, Inc. v. Franking Fueling Systems, Inc.,* 2007 WL 287338 4 (S.D.Cal. September 28, 2007) (citing California law), Plaintiff does not cite any cases excusing the lack of a performance allegation. Accordingly, the Court finds Defendant's Motion to Dismiss with respect to the Contract Claim should be **GRANTED.**

*CONCLUSION*

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss as to all of Plaintiff's causes of action. However, because the Court concludes allegations of other facts consistent with the Complaint could possibly cure the deficiencies, the Court **GRANTS** Plaintiff leave to amend its Complaint. Plaintiff may file an amended complaint addressing the deficiencies set forth above, no later than 14 days from the date this order is filed.

S.D.Cal.,2008.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 251977 (S.D.Cal.)
**(Cite as: 2008 WL 251977 (S.D.Cal.))**

Daw Industries, Inc. v. Proteor Holdings, S.A.
Not Reported in F.Supp.2d, 2008 WL 251977 (S.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.