1   Yitai Hu (SBN 248085) (yitai.hu@alston.com)
    Sean P. DeBruine (SBN 168071) (sean.debruine@alston.com)
2   Elizabeth H. Rader (SBN 184963) (elizabeth.rader@alston.com)
    **ALSTON & BIRD LLP**
3   Two Palo Alto Square
    3000 El Camino Real, Suite 400
4   Palo Alto, California  94306
    Telephone:      650-838-2000
5   Facsimile:      650-838-2001

6   T. Hunter Jefferson (admitted *pro hac vice*)
    (hunter.jefferson@alston.com)
7   **ALSTON & BIRD LLP**
    One Atlantic Center
8   1201 West Peachtree Street
    Atlanta, Georgia 30309-3424
9   Telephone:      404-881-7000
    Facsimile:      404-881-7777

10
    Attorneys for Plaintiff and Counterdefendant
11  ELAN MICROELECTRONICS CORPORATION

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                         SAN JOSE DIVISION

15

16  ELAN MICROELECTRONICS                    Case No. 09-cv-01531 RS
    CORPORATION,
17                                           **ELAN MICROELECTRONICS
                                             CORPORATION'S OPPOSITION TO
18              Plaintiff,                   APPLE INC.'S OPENING CLAIM
                                             CONSTRUCTION BRIEF**
19          v.

20  APPLE, INC.,                             DATE:     June 23, 2010
                                             TIME:     1:30 p.m.
21              Defendant.                   JUDGE:    Richard Seeborg
                                             CTRM:     3, 17th Floor
22

23  AND RELATED COUNTERCLAIMS

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................................................1

II.  U.S. PATENT NO. 5,825,352 .....................................................................2

    A.   Apple's Recitation of the Facts is Self-Serving and
        Incomplete.................................................................................................2

    B.   Judicial Estoppel Is Inapplicable Because Elan Did Not Offer
        the Original Construction To Misrepresent Facts or Defraud
        the Court and Is Not Advocating Its Modified Construction to
        Pervert the Judicial Process.......................................................................3

    C.   Collateral Estoppel Is Inapplicable Because The Order of
        Identification Steps In Judge Breyer's Claim Construction
        Was Not the Basis For The Summary Judgment of
        Infringement in The Synaptics Case. .......................................................5

    D.   Elan's Construction Should Be Adopted on the Merits............................7

        1.   Apple's Attempt to Rewrite the Claims to Require
            Scanning "On an Axis" is Legally and Factually
            Erroneous. .................................................................................7

        2.   "Identify" and "In Response To" Are Common
            English Terms That Need No Construction ...........................15

        3.   The specification Clearly Discloses and Links Copious
            Structure to the  "means for selecting an appropriate
            control function" Limitation (claim 19) and Therefore
            the Claim Is Not Indefinite......................................................16

III. U.S. PATENT NO.  7,274,353 ...................................................................18

    A.   The Claims Do Not Require the First and Second Patterns to
        be Single Printed Graphics......................................................................18

        1.   Apple's Argument that Elan's Construction of
            "Second Patterns" Broadens The Claim By Changing
            "And" to "Or" Misstates Elan's Position to Set up a
            Straw Man. ...............................................................................18

IV.  U.S. Patent No. 5,764,218..........................................................................19

    A.   "Cursor control operation" In Claims 1 and 5 of the '218
        Patent Should Be Construed to Mean "Providing of Positional
        Data to Effect Movement of the Cursor (i.e. Cursor
        Tracking)." ..............................................................................................19

V.   U.S. Patent No. 7,495,659..........................................................................21

    A.   "Native Sensor Coordinates Should be Construed to Mean
        "Coordinates Indicating the Absolute Position of an Object on

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

or Near the Touchpad.".....................................................................................21

B.      "Logical Device Units" Should Be Construed To Mean
        "Discrete User Actuation Zones Representing Areas of the
        Touch Pad Encompassing Groups of Native Sensor
        Coordinates.".......................................................................................23

VI.     CONCLUSION ..........................................................................................25

1

## **TABLE OF CONTENTS**

Page

2

C<small>ASES</small>

3

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
475 F.3d 1080, 1086 (9th Cir. 2007)..................................................................... 5

4

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*,
504 F.3d 1236, 1248 (Fed. Cir. 2007).................................................................. 21

5

6

*Altiris, Inc. v. Symantec Corp.*,
318 F.3d 1363, 1372 (Fed. Cir. 2003).................................................................. 10

7

*Blackboard, Inc. v. Desire2Learn Inc.*,
574 F.3d 1371 (2009)............................................................................................. 17

8

9

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
402 U.S. 313, 332-33 (1971)................................................................................ 6

10

*Comark Commc'ns, Inc. v. Harris Corp.*,
156 F.3d 1182, 1187 (Fed. Cir. 1988).................................................................. 10

11

12

*Conoco, Inc. v. Energy & Envtl. Int'l., L.C.*,
460 F.3d 1349, 1357-58 (Fed. Cir. 2006) .......................................................... 11

13

*Dana v. E.S. Originals, Inc.*,
342 F.3d 1320, 1327-28 (Fed. Cir. 2003) ........................................................... 5

14

15

*Data Gen. Corp. v. Johnson*,
78 F.3d 1556, 1565 (Fed. Cir. 1996)..................................................................... 4

16

*In re Freeman*,
30 F.3d 1459, 1465 (Fed. Cir. 1994)..................................................................... 6

17

18

*In re Trans Tex. Holdings Corp.*,
498 F.3d 1290, 1297 (Fed. Cir. 2007).................................................................. 5

19

*Jackson Jordan, Inc. v. Plasser American Corp.*,
747 F.2d 1567, 1577 (Fed. Cir. 1984).................................................................. 6

20

21

*Jet, Inc. v. Sewage Aeration Sys.*,
223 F.3d 1360, 1366 (Fed. Cir. 2000).................................................................. 6

22

*Johnson v. Or. Dep't of Human Res., Rehab. Div.*,
141 F.3d 1361, 1369 (9th Cir. 1998)..................................................................... 4

23

24

*Kollmorgen Corp. v. Yaskawa Elec. Corp.*,
147 F. Supp. 2d 464, 470 (W.D. Va. 2001) ......................................................... 5

25

*McCarty v. Lehigh Valley R.R. Co.*,
160 U.S. 110, 116 (1895)....................................................................................... 10

26

27

*Merck & Co v. Teva Pharms. USA, Inc.*,
395 F.3d 1364, 1372 (Fed. Cir. 2005).................................................................. 21

28

*Montana v. United States*,
    440 U.S. 147, 153-55 (1979)..................................................................................... 6

*Phillips v. AHW Corp.*,
    415 F.3d 1303, 1312 (Fed. Cir. 2005)................................................................. 8, 10, 11

*Phonometrics, Inc. v. N. Telecom Inc.*,
    133 F.3d 1459, 1464 (Fed. Cir. 1998)...................................................................... 6

*Prima Tek II, LLC v. Polypap, S.A.R.L.*,
    318 F.3d 1143, 1148 (Fed. Cir. 2003)..................................................................... 10

*Russell v. Rolfs*,
    893 F.2d 1033, 1037 (9th Cir. 1990)........................................................................ 4

*Sandisk Corp. v. Memorex Prods, Inc.*,
    415 F.3d 1278, 1290 (Fed. Cir. 2005)................................................................... 4, 5

*Shell Petroleum, Inc. v. United States*,
    319 F.3d 1334, 1339 (Fed. Cir. 2003)...................................................................... 6

*Specialty Composites v. Cabot Corp.*,
    845 F.2d 981, 987 (Fed. Cir. 1988)......................................................................... 10

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107, 1121 (Fed. Cir. 1985)...................................................................... 21

*Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*,
    294 F.3d 1330, 1335-36 (Fed. Cir. 2002) .................................................................. 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

Apple's constructions of the disputed claim terms are blatantly litigation-driven.  For example, for the key claim limitations of the '352 patent, Apple would inject wholesale a new limitation found nowhere in the claim language, and expressly contradicted by the patent's written description.  In other instances, Apple proposes to merely paraphrase the claim terms, doing nothing in the process to clarify the scope of the claims.  Moreover, Apple then reveals its true intention – to further limit the scope of the claims by reinterpreting its own proposed construction.  Apple would have the Court construe the clear English phrase "in response to" to mean "after and in reaction to."  Apple admits, however, that it will argue that its construction means "immediately after and in reaction exclusively to."  The Court should not permit Apple to play such games.  Instead, it should adopt Elan's proposed constructions of the disputed claim terms, for the reasons set forth here and in Elan's Opening Claim Construction Brief.

Likely as a diversionary tactic to take the Court's attention away from its incorrect claim construction position, Apple strenuously argues that Elan should be estopped from advocating any change to the claim construction the Court adopted for the '352 patent in *Elantech Devices Corp. v. Synaptics, Inc.*  Apple provides, at best, a selective recitation of the facts in support of its theory of estoppel.  There is no basis in equity for the Court to impose such a harsh outcome on Elan.  It is true that Elan's predecessor, Elantech, erroneously proposed a construction of certain claim terms that imposed a limitation on the order in which certain claimed steps are performed.  That aspect of the claim construction was not directly disputed in the *Synaptics* matter, however, and played no role in the eventual resolution of that case.  Moreover, with respect to a related term, Elantech in the *Synaptics* case raised exactly the same argument that Apple attacks here as estopped, and Elantech prevailed on that argument, consistent with its positions in this action.  Apple offers no evidence that it would be prejudiced in any way should the Court consider the merits of the parties' claim construction arguments.  As such, the Court should reject Apple's estoppel arguments, and determine the proper constructions of the disputed claim terms on the merits of the arguments presented in this action.  When it does so, it will become apparent that Apple's positions are inconsistent with the intrinsic evidence, the extrinsic evidence and the law of

1    patent claim construction.

2    **II.      U.S. PATENT NO. 5,825,352**

3           **A.      Apple's Recitation of the Facts is Self-Serving and Incomplete**

4                  Apple focuses much of its argument not on the proper meaning of the claim terms in the

5    '352 patent, but instead urging that Elan is estopped from arguing for the proper construction of

6    those terms.  In particular, Apple argues that Elan should not be permitted to argue that the steps

7    of "identify a first maxima…," "identify a minima …," and "identify a second maxima…," need

8    not be performed in that order.  Apple accuses Elan of a sudden change in its claim construction

9    positions, including that Elan successfully presented to Judge Breyer in *Elantech Devices Corp. v.*

10   *Synaptics, Inc.*, Case No. C06-01839 CRB (the "*Synaptics* case"), and urges that Elan's

11   modification of its position is barred by both the doctrines of judicial and collateral estoppel.

12   Apple's argument rests, however, on a highly selective recitation of the relevant facts.  When the

13   facts are examined as a whole, and the proper standard is applied, it becomes clear that Elan is not

14   estopped from requesting that the claims be given their proper scope.

15                 Elan's predecessor in ownership of the '352 patent, Elantech Devices, did suggest a

16   construction of the '352 patent in which these method steps occurred one after the other.  The

17   parties did not contest that language during claim construction or summary judgment.  *See*

18   Supplemental Declaration of Sean P. DeBruine, ("Supp. DeBruine Decl.") ¶ 2 and DeBruine

19   Decl., Dkt. No. 88-12 at 5:5-18.  Rather, the parties focused on other disputes.  This parties did,

20   however, litigate Synaptics' proposal that the related claim term "scanning the touch sensor" be

21   construed to require that the scan proceed "in scan order."  In opposition to Synaptics' proposal,

22   Elan raised claim construction arguments consistent with those it presents here, namely that the

23   term "following" in the claim limitation "identify a minima following a first maxima" refers only

24   to a conceptual relationship and does not impose any order on how the method is carried out.  *Id.*

25   Elan prevailed on that argument and no order was imposed on the "scanning the touch sensor"

26   limitation.  Throughout the argument on the parties' respective motions for summary judgment,

27   the order of the "identify" steps was not at issue.  While certain of the Synaptics products were

28   found to meet the limitations as construed by the Court, there was no dispute or discussion on this

1  point. As such, Elan would have prevailed, to the extent it did, if it had secured the claim

2  construction it advocates here. *Id.* at ¶ 3. As explained in more detail below, these facts support

3  neither judicial estoppel nor issue preclusion.

4       Apple also provides a partial description of the process in this matter by which the parties

5  set out their respective claim construction positions. Prior to filing the Joint Claim Construction

6  Statement, the parties met and conferred several times on some thirty disputed claim terms or

7  phrases from five different patents. *See id* at ¶ 4. They discussed simply adopting the *Synaptics*

8  construction for the "identify" steps of claim 1. Very shortly before the deadline for filing the

9  parties' Joint Claim Construction Statement, however, Apple proposed an entirely new

10  construction of the terms "identify a first maxima," "identify a minima," and "identify a second

11  maxima" appearing in claim 1 of Elan's '352 patent. When Apple provided a revised draft of the

12  chart setting for the parties' positions on the '352 patent claims for the Joint Claim Construction

13  Statement, there was no reference to a requirement that the step of "identifying the minima

14  following the first maxima" be performed after "identifying the first maxima." *Id.* and Dkt No.

15  60. It was not until March 31, 2010, that Apple raised this aspect of its proposed construction,

16  characterizing the omission as a typographical error. Supp. DeBruine Decl., ¶ 4 and Ex. A. Apple

17  also made reference to other changes Apple proposed to make to its constructions of other claim

18  terms. *Id.* As Apple notes, Elan responded that it was not its intention to include such a temporal

19  limitation in its proposed construction. *Id*. As such, the uncertainty in the parties' positions, and

20  the timing of the clarification of those positions is as much a result of Apple's changing positions

21  as it is Elan's. For the reasons explained below, estoppel is not appropriate.[1]

22      **B.    Judicial Estoppel Is Inapplicable Because Elan Did Not Offer the Original Construction To Misrepresent Facts or Defraud the Court and Is Not Advocating Its Modified Construction to Pervert the Judicial Process.**

24      Judicial estoppel is an equitable doctrine which the court has discretion to invoke. *Sandisk*

[1] Citing a footnote in *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1282 n1 (Fed. Cir. 2010), Apple urges that Elan should be estopped from modifying the claim construction it advanced in *Synaptics*. But *Schindler* does not even use the word "estoppel." The Federal Circuit reversed other aspects of the district court's claim construction and vacated the grant of summary judgment and remanded for further proceedings. The footnote language on which Apple relies can be explained by the Court's refusal, on grounds of waiver, to consider on appeal an argument never presented in the first instance to the district court.

*Corp. v. Memorex Prods, Inc.*, 415 F.3d 1278, 1290 (Fed. Cir. 2005) (rejecting accused infringer's estoppel argument where applying estoppel would "subvert the useful function of pre-trial discovery and motion practice in focusing issues for trial"). It is "designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996). The doctrine should not be used as a technical defense by litigants, such as Apple, but instead only be invoked to protect the integrity of the judicial process. *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). In addition, the Ninth Circuit has held that judicial estoppel is to be applied only in instances of "'knowing misrepresentation to or []fraud on the court.'" *Johnson v. Or. Dep't of Human Res., Rehab. Div.*, 141 F.3d 1361, 1369 (9th Cir. 1998). As can be seen from the chart on page 6 of Apple's Opening Claim Construction Brief, most of Elan's construction is exactly Judge Breyer's construction. The requirement to identify a first peak value, the lowest value and a second peak value in a finger profile obtained from scanning the touch sensor is unchanged. Elan has only removed the words "before" and "after" upon realizing, for the first time, that these words could be read to require that the claim requires identifying the two peak values and the lowest value in a specific sequence, when in fact they were only ever meant to explain the spatial relationship among the peak values and the lowest value.[2] On the other hand, Apple presents no argument or facts showing that Elan knowingly misrepresented or intended to fraud the court in either the *Synaptics* litigation or in the current case. In fact, Elan's modification of the claim construction can only be characterized as an effort to cure an inadvertent oversight to the construction advanced in the *Synaptics* case. Having failed to provide the basis necessary for invoking judicial estoppel, Apple's claim that Elan is judicially estopped from modifying its claim construction position has no merit.

---

[2] *Solomon Techs. Inc. v. Toyota Motor Corp.*, No. 8:05-cv-1702-T-MAP, 2010 WL 715243(M.D. Fla. Jan. 26, 2010) is distinguishable on its facts. The patentee in that case took literally opposite positions; contending in the ITC that the term "power conversion means" is a means-plus-function limitation subject to 15 U.S.C. § 112, paragraph 6 and then contending in the district court that the same term "power conversion means" is not a means-plus-function limitation. Elan, in contrast, only seeks to remove extraneous language that is arguably inconsistent with the position that it has always taken, that a finger profile does not have to be obtained by scanning "on an axis" or "in a line."

1      Moreover, the Federal Circuit has held that "the equities do not favor applying judicial

2 estoppel to prevent claim construction arguments from evolving after [a preliminary construction]

3 . . . , recognizing that a preliminary construction made without full development of the record or

4 issues should be open to revision." *Sandisk*, 415 F.3d at 1291. "After discovery the court expects

5 the parties to refine the disputed issues and learn more about the claim terms and technology, at

6 which point a more accurate claim construction can be attempted." *Id*. This is exactly our case.

7 The *Synaptics* case settled well before the discovery phase had been completed, that the record and

8 issues have not been fully developed. *See* Supp. DeBruine Decl., ¶¶ 7 and 8 and Exs. D and E.

9 The *Synaptics* court would expect claim construction to evolve after Judge Breyer issued the

10 preliminary claim construction. The equities do not favor applying judicial estoppel against Elan.

11          **C.     Collateral Estoppel Is Inapplicable Because The Order of Identification Steps In
                      Judge Breyer's Claim Construction Was Not the Basis For The Summary
12                    Judgment of Infringement in The Synaptics Case.**

13      Collateral estoppel (or "issue preclusion"), in contrast to judicial estoppel, applies to

14 prevent re-litigation of issues actually litigated and necessarily decided, after a full and fair

15 opportunity for litigation, in a prior proceeding. *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,

16 475 F.3d 1080, 1086 (9th Cir. 2007); *In re Trans Tex. Holdings Corp.*, 498 F.3d 1290, 1297 (Fed.

17 Cir. 2007). Although the Federal Circuit usually applies regional circuit law to procedural

18 questions, such as issue preclusion, whether to invoke issue preclusion with respect to claim

19 construction is so intimately involved with substantive patent law that it should be governed by

20 Federal Circuit law. *See Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 294 F.3d 1330, 1335-36

21 (Fed. Cir. 2002) (Dyk, J. concurring); *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1327-28 (Fed.

22 Cir. 2003) (Dyk, J. concurring). While some district courts have treated claim construction rulings

23 as final judgments and rigidly applied collateral estoppel, most district courts have adopted a more

24 flexible approach. *See Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F. Supp. 2d 464, 470

25 (W.D. Va. 2001) (courts need not blindly apply the doctrine of collateral estoppel to a prior

26 Markman ruling). Indeed, the Federal Circuit has stated that for an issue decided in a prior

27 proceeding to have preclusive effect in a later action, the determination of that issue must have

28 been necessary to the final judgment in the prior case. *Shell Petroleum, Inc. v. United States*, 319

1    F.3d 1334, 1339 (Fed. Cir. 2003) (citing *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994),

2    which affirmed the holding in *Jackson Jordan, Inc. v. Plasser American Corp.*, 747 F.2d 1567,

3    1577 (Fed. Cir. 1984) that in order to apply issue preclusion to a claim interpretation issue decided

4    in a prior infringement adjudication, the interpretation of the claim had to be the reason for the loss

5    in the prior case on the issue of infringement); *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360,

6    1366 (Fed. Cir. 2000) (citing *Montana v. United States*, 440 U.S. 147, 153-55 (1979) and *Blonder-*

7    *Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 332-33 (1971)).  The purpose of this

8    requirement is to prevent the incidental or collateral determination of a nonessential issue from

9    precluding reconsideration of that issue in later litigation.  *Shell Petroleum*, 319 F.3d at 1339;

10   *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998) (prior decision

11   construing claim limitations not at issue in the prior action was merely dictum and therefore has

12   no issue preclusive effect).

13          Elan won summary judgment in the *Synaptics* case because the accused products identified

14   a first peak value, the lowest value between the two peak values and a second peak value.  *See*

15   Declaration of Elizabeth H. Rader In Support of Elan Microelectronics Corporation's Opposition to

16   Apple's Opening Claim Construction Brief ("Rader Decl."), Ex. A (Mem. and Order at 6-7, Mar.

17   13, 2008).  Elan's infringement argument did not include the order in which the accused Synaptics

18   products identified the values.  *See id*. Exs. B and C (Elantech Devices Corp.'s Notice of Mot. and

19   Mot. for Summ. J. for Infringement at 11-15, May 25, 2007; Elantech Devices Corp.'s Reply Br.

20   in Support of Its Mot. for Summ. J. for Infringement at 1-6, Jun. 22, 2007); *see also* Supp.

21   DeBruine Decl., Exs. B and C (Elantech Devices Corp.'s Notice of Mot. and Mot. for Partial

22   Summ. J. of Infringement at 5-7, Nov. 20, 2007; Elantech Devices Corp.'s Reply Mem. in Supp.

23   of Its Mot. for Partial Summ. J. of Infringement of the '352 Patent, Dec. 28, 2007).  It is telling

24   that Apple uses a snippet of the transcript of the oral argument, taken out of context, rather than

25   Elan's infringement contentions or claim charts, to imply that Elan argued that the claim requires

26   doing the identifications in a specific order.  In arriving at this decision, Judge Breyer did not

27   analyze the order of steps.  *See* Rader Decl., Ex. A at 6-7.  Thus, whether or not the claims

28   required a temporal sequence was in no way necessary for Judge Breyer to conclude that

Synaptics' products identified a first peak value, the lowest value between the two peak values and a second peak value and, as a result, infringed the '352 patent. *Id*. Judge Breyer could and would have reached the same holding of infringement applying the construction Elan now proposes. Supp. DeBruine Decl., ¶ 3. To hold that Elan is estopped from modifying its claim construction position would run afoul of the underlying policy of collateral estoppel by precluding reconsideration of nonessential issues that were incidentally or collaterally determined in the prior case.

**D.    Elan's Construction Should Be Adopted on the Merits**

       **1.    Apple's Attempt to Rewrite the Claims to Require Scanning "On an Axis" is Legally and Factually Erroneous.**

| Claim term | Apple's Proposal | Elan's Proposal |
|---|---|---|
| identity a first maxima in a signal corresponding to a first finger | identify a first peak value in a finger profile *taken on an axis* obtained from scanning the touch sensor (emphasis added) | identify a first peak value in a finger profile obtained from scanning the touch sensor |
| identify a minima . . . following a first maxima | identify the lowest value in the finger profile taken on said axis that occurs after the first peak value and before another peak value is identified | identify the lowest value in the finger profile that occurs after the first peak value |
| identify a second maxima in a signal corresponding to a second finger following said minima | after identifying the lowest value in the finger profile taken on said axis, identify a second peak value in the finger profile taken on said axis | identify a second peak value in the finger profile that occurs after the first peak value |

1   As discussed above, there is simply no basis in fact or law for Apple's claim that Elan is

2   estoppel from advocating for the legally proper construction of the '352 patent.  In fact, the Court

3   should consider Apple's overwrought arguments for what they are:  a diversionary tactic to allow

4   its facially improper claim construction to slip past the Court's scrutiny.  How else could Apple

5   hope to succeed in its brazen attempt to have the Court simply rewrite the language of the asserted

6   claims?  Even a cursory examination of Apple's arguments in light of the well-established case

7   law makes abundantly clear that Apple's proposed construction, with its blatant addition of

8   limitations found nowhere in the claims, must be rejected.  In particular, Apple's construction

9   violates – and its Brief simply ignores – every fundamental tenet of the claim construction

10  process:

11          (a)     **Apple's Claim Construction Ignores the Basic Tenet That the
12                  Claim Language Itself Defines the Scope of the Claims**

13  Construction of patent claims must begin and always be grounded in the claim language

14  itself.  The language of the claims themselves define the scope of the patented invention.  This is

15  the "bedrock principle" from which all claim construction analysis must proceed.  *Phillips v. AHW

16  Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  Apple's Brief never once sets out for the

17  Court the claim language Apple asks it to construe in the context of the entire claim.  Rather,

18  Apple provides only the words and phrases for which it is seeking a limited construction.  *See*

19  Apple Br. at 6.  Apple's proposed construction of the phrases "indentify a first maxima," "identify

20  a minima" and "identify a second maxima" each would insert the limitation "taken on an axis."

21  Apple repeatedly makes the bald statement that the claims themselves are somehow clearly limited

22  to a one-dimensional scan of the touchpad traces taken along an axis.  *Id*. at 6:18-20 (limitation

23  confirmed "throughout the specification and the claims") and 12:10-11 ("essential to the very

24  character of the claimed invention").  Yet none of these statements are backed up by any citation

25  to or discussion of the claim themselves.

26          The reason for Apple's strategy is clear for one reason: There is simply no basis in the

27  language of the claims for the extraneous limitation Apple would impose.  The relevant language

28  in claim 1 reads as follows:

1    "Scanning the touch sensor to (a) identify a first maxima in a signal corresponding to a

2    first finger; (b) identify a minima following the first maxima; and (c) identify a second maxima in

3    a signal corresponding to a second finger following said minima"

4    DeBruine Decl., Dkt No. 88, Ex. A at 16:16-20.  While it is impossible to discern from Apple's

5    brief, it would appear that Apple would have the Court construe the claim term "signal

6    corresponding to a first finger" to mean a "one dimensional profile of finger capacitance taken

7    from scanning the touch sensor along an axis."  Interesting then that Apple Brief, other than the

8    brief recitation of parts of this claim element in its table setting forth the parties' position, never

9    once mentions the terms "Scanning" or "signal corresponding" to a first or second finger.

10       Apple's reluctance to even mention the actual claim language stems from the fact that any

11   review of that language is fatal to its proposed construction.  On its face there is no basis at all to

12   limit the term "signal corresponding to . . . a finger" to the precise requirement that the signal be

13   converted to values "taken on an axis," and Apple makes no attempt to provide one.  Rather the

14   opposite is true.  Nothing in the claim restricts the invention to a touch sensor that is scanned

15   along an axis.  Rather, the patent makes very clear that the claims encompass broadly any type of

16   touch sensor.  While the preferred embodiment is described in the context of a capacitive sensor

17   with traces arrayed in an x and y matrix, the written description makes clear that there is no

18   intention to limit the claims.  Thus, the patent states that the invention can be practiced with "any

19   conventional touch sensing technology."  *Id*. at 2:21-22.  Those technologies include "resistive

20   membranes" "resistive tablets, surface acoustic wave . . . strain gages or pressure sensors and

21   optical sensors."  *Id*. at 1:20-26.  In addition, the patent makes clear that the step of "scanning"

22   need not proceed along an axis, or in any sequential manner.  Rather, the patent states that the

23   sensors may be scanned in any order or simultaneously.  *Id*. at 7:36-37.  Apple, as the party

24   seeking to read additional limitations into the plain language of the claim, bears the burden of

25   demonstrating why such a limitation is required in light of the language of the claims themselves.

26   Apple has not and cannot do so.

27

28

1

2

### (b)   Apple's Construction Ingores the Tenet that Claims Are Not Limited to the Embodiments in the Written Description

3

4        Apple also ignores the principle that limitations found only in the specification may not be

5    imported into the claims. *Phillips*, 415 F.3d at 1320.  That is the case even when the patent

6    discloses only a single embodiment. *Id*.  The Federal Circuit in *Phillips* traced this principle back

7    to the Patent Act of 1839, citing numerous early Supreme Court opinions. *Id*. at 1312.  For

8    example, in 1895 the Supreme Court stated "if we once begin to include elements not mentioned

9    in the claim, in order to limit such claim …, we should never know where to stop." *McCarty v.

10   Lehigh Valley R.R. Co.*, 160 U.S. 110, 116 (1895).  Not surprisingly, this tenet was universally

11   recognized by the Federal Circuit prior to the *Phillips* en banc decision. *See, e.g Specialty

12   Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988) ("Where a specification does not

13   *require* a limitation, that limitation should not be read from the specification into the claims.");

14   *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1988) (Language in the

15   accused infringer's proposed construction "clearly found in the . . . patent's description of the

16   preferred embodiment.  It is precisely against this type of claim construction that our prior case

17   law counsels.").  It is also significant, and again ignored by Apple, that claims are not limited to

18   the preferred embodiment even where only one embodiment is described. *Altiris, Inc. v. Symantec

19   Corp.*, 318 F.3d 1363, 1372 (Fed. Cir. 2003) ("merely because the specification only describes one

20   embodiment is not a sufficient reason to limit the claims to that embodiment.")  "Similarly, the

21   mere fact that the patent drawings depict a particular embodiment of the patent does not operate to

22   limit the claims to that specific configuration." *Prima Tek II, LLC v. Polypap, S.A.R.L.,* 318 F.3d

23   1143, 1148 (Fed. Cir. 2003).

        Yet Apple's entire claim construction argument is based upon exactly this sort of improper

24   importation of limitations nowhere found in the claim language.  Apple's description of the patent,

25   and argument for its limitation to the preferred embodiment, relies entirely on its description of

26   what the patent expressly refers to as an "exemplary" embodiment, that is a "simplified"

27   illustration.  DeBruine Decl., Dkt No. 88, Ex. A at 7:1 and 10:66-11:1.  In order to limit the claim

28   term with reference to the disclosed embodiments, the specification must contain some indication

1    that equated the disclosed invention with the claimed invention, or manifested some clear

2    intention to exclude alternatives.  *Phillips,* 415 F.3d at 1316; *see also Conoco, Inc. v. Energy &*

3    *Envtl. Int'l., L.C.*, 460 F.3d 1349, 1357-58 (Fed. Cir. 2006) (intention to limit or disavow claim

4    scope must be clear).  Apple points to no such language in the claims or the specification, because

5    t here are none.  For this reason as well Apple's attempt to inject "taken on an axis" into the claim

6    construction is manifestly improper.

7               (c)     **Apple's Construction Ignores the Basic Legal Standard That**
                        **Claims Are To Be Construed As They Would Be Understood By**
8                       **One Of Ordinary Skill In The Art.**

9           In light of Apple's failure to consider the "bedrock principle of claim construction," that

10   the claims themselves define the scope of the invention, which follows from its impermissible

11   attempt to limit the claims to the preferred embodiment.  It is not surprising that Apple's

12   construction ignores the very legal standard that governs the claim construction process.  The

13   "objective baseline" for the construction of disputed claim terms is the determination of "how a

14   person of ordinary skill in the art understands a claim term."  *Phillips*, 415 F.3d. at 1313.  Again,

15   Apple is largely silent with regard to who such a person is, what knowledge he or she would bring

16   to bear on a reading of the patent and file history.  Glaringly, Apple provides no basis whatsoever

17   for its implicit claim that one skilled in the art would understand that "a signal corresponding to a .

18   . .finger" is somehow limited to a representation of signals taken "along an axis."  Again, Apple

19   has not addressed this point because to do so would be fatal to its unduly limited claim

20   construction.  As Elan has demonstrated, one of skill in the art would not understand the term

21   "signal corresponding to a . . .finger" that results from scanning a touch sensor to be limited to one

22   dimensional signals taken on an axis.  *See* Br. at 21-23.  Apple does not, and can not, dispute that

23   known touchpads could generate what Apple refers to as two-dimensional signals, e.g. where the

24   values generated from finger contact are stored as coordinates, for example in a matrix of x and y

25   values simultaneously.

26          One of ordinary skill in the art would not understand the claim language "scanning the

27   touch sensor to identify . . . a maxima in a signal corresponding to . . . a finger" to be limited to

28   scanning a profile taken on an axis.  Signals corresponding to the finger may be created and stored

1   by scanning touch sensors sequentially simultaneously or in any order.  DeBruine Decl., Dkt No.

2   88, Ex. A at 7:36-40 and 11:11-15.  One of ordinary skill in the art understood that the data could

3   determined and stored along an axis, or in a matrix of discrete points.  *See* Dezmelyk Decl., Dkt

4   No. 89, ¶ 20.  In addition, as described in more detail below, Apple is using the term "axis" in its

5   proposed construction in a way different from the way that term is understood by those skilled in

6   the art.  Because Apple's proffered construction of these limitations would require the Court to

7   depart from the bedrock legal principles governing claim construction, it must be rejected as a

8   matter of law.

9           **(d)    Apple Provides No Cogent Argument to for its Limitation of the**
10                  **"Identifying" to a Sequential Temporal and Spatial Order**

11          On the merits, Apple's attempt to insert "taken along an axis" must be rejected.  First,

12  Apple does not appear to use the term "axis" as it is understood by those skilled in the art, or as it

13  used in the patent.  The term "axis" is defined as "[i]n a coordinate system, the line determining

14  one of the coordinates, obtained by setting all other coordinates to zero."  *See* Rebuttal Declaration

15  of Robert Dezmelyk in Support of Elan Microelectronics Corp.'s Opposition to Apple Inc.'s

16  Opening Claim Construction Brief filed herewith ("Dezmelyk Rebuttal Decl."), ¶ 3 and Ex. 1

17  (McGraw Hill Scientific Dictionary at 136).  The context of the preferred embodiment of the

18  patent there are two axes --the x-axis and the y-axis.  Supp. DeBruine Decl. at 11:11-15.  It is

19  precisely in the context of this understanding of "axis" in which the patent flatly states that

20  identification of the maxima and minima are not limited to a profile taken "on an axis," e.g. in the

21  X or Y direction.  *Id.*  Because the patent expressly teaches that it is ***not*** limited to analysis along

22  an axis, Apple's attempt to interject such a limitation must be rejected.  In addition, Apple's

23  attempt to define a claim limitation by using a term in a manner other than its plain meaning only

24  adds ambiguity to the claim, rather than clarify its scope.  For this reason as well Apple's

25  construction must be rejected.

26          To the extent Apple provides any arguments on the merits for its construction of the terms

27  from the '352 patents, those arguments are specious and do not support Apple's baldy contrived

28  attempt to add limitations to the claims wholesale.  Apple's addresses both its "on an axis"

1  limitation and its proposed requirement that the steps of the method be performed in the recited

2  order in the same section of its Brief.  *See* Apple Br. at 9:21-14:27.  Apple starts from the premise

3  that each of the "identification" steps must be performed "sequentially *in space* and *in time.*"  *Id.*

4  at 9:27-28.  Nothing in Apple's brief supports that argument, however.

5          To support is argument that the identification process must be "on an axis" Apple spends

6  considerable time analyzing an exemplary illustration of the capacitive profile of three fingers in

7  contact with the touch sensor where the x and y values are plotted simultaneously.  *Id.* at 9:21-

8  12:4.  Nothing in that convoluted discussion mandates, or even supports, the insertion of arbitrary

9  claim limitations as Apple proposes.  In particular, Apple asserts that the relational limitations

10 "following" are somehow meaningless when applied to such a two dimensional representation.

11 Apple's claim is not supported by any evidence and is contrary to common sense.

12         Apple's argument is that, absent a requirement that the values occurring along each one

13 dimensional axis be treated in order, there is no way to determine which maxima follows which.

14 "Absent an axis to traverse, there is no starting place and no definitive way to …identify one peak

15 as 'following' another."  *Id.* at 10:26-27.  The flaw in Apple's logic is that it assumes its own

16 conclusion -- that there is only possible starting point and one way to analyze the data.  However,

17 one skilled in the art would not have such a limited understanding of the claim language.  The

18 operative language, "scanning the touch sensor to … identify" would be understood by those

19 skilled in the art to encompass *any* orderly review of the entire touch sensor.  "Scan" to mean "to

20 examine an area . . . point by point in an ordered sequence."  Dezmelyk Rebuttal Decl., Ex. 1

21 (McGraw Hill at 1420).  A "scan" is therefore "one complete circular, up and down, or left to right

22 sweep of the . . . device making the scan."  *Id.*  One of ordinary skill in the art would therefore

23 understand that the scan may proceed in any orderly manner that would result in an examination of

24 all of the sensor values.

25         A typical "scan" well known to electrical engineers is a "raster scan" in which the process

26 begins in one corner and proceeds in a back and forth matter down or across, depending on the

27 orientation chosen).  The starting point for determining which follows another can be arbitrary,

28 and there are several ways to determine relative position.  For example, the analysis could easily

1    start at the lower left of the illustrated capacitance graph.  If the analysis then proceeds by

2    examining along the values in the x direction along the 0 y axis, then proceeds to the 1 y axis, etc.

3    quickly find the signal corresponding to finger 1 and its maxima.  That peak would be followed by

4    a series of locations with no capacitive values and then the second finger, which Apple

5    erroneously labels as "Peak 3."

6         Again, Apple's entire argument **starts from** the premise that the capacitance values must

7    be analyzed along either the x or y axis.  "As shown below, Peak 2 follows Peak 1 and precedes

8    Peak 3 as one travels from left-to-right **along the x-axis,** while Peak 3 follows Peak 1 and

9    precedes Peak 2 **along the y-axis.**"  Br. at 11:1-9.  Logic that starts with its own conclusion as an

10   assumption is rarely probative or anything, and that is the case here.  Apple's entire argument is

11   premised on the assumption that only a procedure for analyzing a one-dimensional set of values

12   can be used to analyze a two-dimensional value set.  The starting point is somewhat arbitrary, with

13   the logical points being one of the four corners of the touchpad.  The logical ending point is

14   clearly the diagonally opposite the starting point.  However, once the starting point and scan

15   direction are chosen, it is an elementary issue to determine which is "first" in reference to the

16   starting point and which "follows" that first point.  The path traversed to arrive at the end point,

17   that the points that "follow" one another, are therefore a function of the choice of scanning

18   method, the starting point and the end point.  Thus, when examined in the method required of

19   claim construction – namely the meaning one of skill in the art would ascribe to the claim terms

20   themselves – Apple provides absolutely no support for its argument that the scanning steps be

21   performed sequentially along an axis.

22         Apple's argument that the identification steps impose a temporal limitation is likewise

23   unsupported.  In its Opening Brief, Elan set forth the premise that, absent some express language

24   in the claim otherwise, there is no requirement that steps of a method be performed in the order

25   recited.  *See* Elan Br., Dkt No. 87 at 23:2-24:25.  Apple cites no authority at all in support of its

26   contention to the contrary, and certainly none that would justify a departure from the presumed

27   meaning of the claims.  Rather, Apple resorts again to a description of the preferred embodiment.

28   Apple Br. at 13-14.  As discussed above, the fact that the preferred embodiment may proceed in a

particular order does not justify importing such a limitation into the claims.  Here, the term

"following" would be understood by those skilled in the art to refer to the spatial relationship of

the maxima and minima with respect to a given reference point.  When understood in that way –

which Apple concedes is a fair understanding, there is no basis on which to impose an addition,

temporal limitation.

### 2.    "Identify" and "In Response To" Are Common English Terms That Need No Construction

| Apple's Proposal | Elan's Proposal |
|---|---|
| "recognize a value to be" | plain meaning |

As discussed in Elan's Opening Brief, Apple's purported constructions of the terms "in

response to" and "identify" are both unnecessary and disingenuous.  First, Apple attempts to

impose its construction of "identify" because of what it termed a "latent dispute" over that term in

the earlier Synaptics litigation.  While it is true that the term "identify" was at issue during the

summary judgment briefing, after claim construction.  Much like Apple does here, this dispute

was the result of Synpatics' attempt to avoid its clear infringement by adding additional

limitations onto the claim term.  And much like this Court should do here, that attempt was

rejected.  Interestingly Apple does not mention *how* the Synaptics Court resolved this dispute.  In

that case Synaptics argued, citing the preferred embodiment, that "identify" required the

identification of "particular" or "specific" measured capacitance values.  *See* Walter Decl., Dkt.

No. 86, Ex. G at 5.  That is precisely what Apple is proposing its construction means here – the

identification of a particular measured value stored in memory.  *See* Apple Br. at 16 (recognition

of "actual value" of maxima and minima); DeBruine Decl., Dkt No. 88, Ex. G at 102:15-105:8.

This Court in *Synaptics* rejected that argument, finding that "identifying" means what is says, that

is to identify the locations of the maxima and minima.  Walter Decl., Dkt No. 86, Ex. L at 16.

Apple's attempt to add additional restrictions onto this limitation should be rejected.

Apple's Brief also points out the "latent dispute" in Apple's proposal to re-write the phrase

"in response to" as "after and in reaction to."  That is because Apple intends its construction to

mean *immediately* after and in response *only* to" the identification of two maxima.  Apple Br. at 17

("immediately following" the identification steps) and 18, n.5 ("using strictly the identification of

two maxima" to the exclusion of other events).  Again, there is no support in the patent or the

specification for this narrow construction, one that Apple apparently dares not even make

explicitly.  In fact, the preferred embodiment contradicts Apple's attempt to add additional

restrictions.  In the preferred embodiment, the patent discloses that steps are taken after the

identification of the maxima and minima to test the relevant values against threshold levels and in

relation to each other.  Only *after* those additional steps, taken to "ensure that a legitimate valley

and two legitimate peaks have been detected" is the indication of two fingers provided.  DeBruine

Decl., Dkt No. 88, Ex. A at 10:52-65.  Thus, while in response to the identification of two

maxima, the indication is neither immediate, nor limited to that factor alone.  Again, Apple

provides no justification for replacing the chosen claim term "response" with its suggestion

"reaction."

>        **3.**      **The specification Clearly Discloses and Links Copious Structure to the**
>                 **"means for selecting an appropriate control function" Limitation (claim**
>                 **19) and Therefore the Claim Is Not Indefinite.**

| Apple's Proposal | Elan's Proposal |
|---|---|
| The recited <u>function</u> is selecting an appropriate control function based on a combination of a number of fingers detected, an amount of time said fingers are detected, and any movement of said fingers. | The recited <u>function</u> is selecting an appropriate control function based on a combination of a number of fingers detected, an amount of time said fingers are detected, and any movement of said fingers. |
| Because the specification does not disclose a corresponding structure, this limitation is indefinite | The <u>corresponding structure</u> is Analog multiplexor 45: Capacitance measuring circuit 70: A to D convertor 80, Microcontroller 60 and/or software, firmware or hardware performing the claimed function. |

Apple's claim that there is insufficient structure disclosed in the specification is somewhat

bewildering.  Apple's claim construction position is that there is no structure disclosed for

mapping a user's gestures to a control function.  Yet Apple plainly admits that the specification

1    does disclose "a few examples of proposed mappings between specific gestures and control

2    functions.  Apple Br. at 20.  Apple simply ignores the very detailed exemplary algorithm disclosed

3    that maps a particular sequence of gestures and mapping those gestures to a particular control

4    function, namely the marking of text.  In particular, the sequence of marking text involves moving

5    the cursor to the desired location with one finger, setting a second finger down to emulate a button

6    press, and then moving the first finger to indicate the text to be marked. The movement may

7    involve lifting and repositioning the finger moving the cursor.  The gesture ends when both fingers

8    are lifted from the touchpad.  DeBruine Decl., Dkt No. 88, Ex. A, Figs. 7F-1 and 7F-2; 12:58-67

9    and 13:44-51.  An algorithm to map those gestures in to the appropriate control function by

10   providing the appropriate button and cursor movement data to the host is set out in Figs. 8 and 9.

11   *Id.* at 13:59-61.  The patent also says that such an algorithm is applicable to the other exemplary

12   gestures.  Thus, there is more than "at most a few" examples; the examples take up 11 sheets of

13   drawings and four columns of explanatory text.  *See id.*, Figs. 7-9; 11:24-16:5.  Moreover, there is

14   no dispute that one of ordinary skill in the art would understand how to modify the detailed

15   algorithm of Figs. 8 and 9 to analyze the other exemplary gestures described in the patent, and to

16   output the proper command and cursor control data to the relevant host or application program.

17   Declaration of Robert Dezmelyk in Support of Elan Microelectronics Corporation's Opening

18   Claim Construction Brief, Dkt. No. 89.

19        Apple's incantation of "computer implemented invention" and citation to a few egregious

20   cases does not make this disclosure disappear.  Rather, the cases Apple cites involve the true case

21   where the only disclosed structure is a computer without any further teaching.  Thus in

22   *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371 (2009), the claim element at issue was a

23   "means for allowing access to and control of the data file associated with the course if

24   authorization is granted based on the access level of the user of the system."  574 F.3d at 1382.

25   The only disclosed structure was "Access control manager 151" described only as performing the

26   claimed function.  *Id.*  That was not sufficient structure because it was only "an abstraction that

27   describes the function … essentially a black box."  *Id.* at 1383.  The other cases cited by Apple

28   involve a similar total lack of structure.  *Id.* at 1383-1384.  Here there is more than just the

disclosure of "software."  The patent describes in detail the hardware involved, the fact that the
function of determining the proper control function may be performed in firmware in the touch
pad controller on software on the host computer, and gives detailed examples of the gestures,
control functions and algorithms that perform the function.

**III.    U.S. PATENT NO. 7,274,353**

    **A.    The Claims Do Not Require the First and Second Patterns to be Single Printed Graphics.**

| Apple's Proposal | Elan's Proposal |
|---|---|
|    a single graphic printed on said panel representing a mode switch that switches from key to handwriting mode and from handwriting to key mode |    information on the panel, visible to the user, indicating where the user can touch to change modes. |

       As anticipated in Elan's Opening Brief, Apple relies on statements in the Specification
stating that the patterns on the touch pad that represent mode switches and the patterns for
operation in key mode and mouse mode can be printed, and on its own interpretation of Figure 1,
with which Elan obviously disagrees, to ask the Court to construe the claims to require a single,
printed graphic.  Apple Br. at 22:2-25:15.  The plain language of the claims does not require
"printing" or that each pattern be a single graphic.  Elan obviously does not dispute that the
specification uses the word "printed" several times.  But the specification is equally clear that
although the patterns are "usually" printed on the top of the panel, "variations or modifications are
possible within the scope of the present invention."  In other words, reading the claims in light of
the specification, how the patterns are displayed on the panel is not important to practicing the
invention, as long as the user can see the patterns and understand from them where to touch to
change mode and where to touch to enter information.

      **1.    Apple's Argument that Elan's Construction of "Second Patterns" Broadens The Claim By Changing "And" to "Or" Misstates Elan's Position to Set up a Straw Man.**

| Apple's Proposal | Elan's Proposal |
|---|---|

| "two or more graphics that are printed on the specific regions and are present in and perform operations in both key and handwriting modes | visual information on the panel that delineates "virtual regions" to convey to the user where to touch to enter alpha numeric data in key mode or enter handwriting data in handwriting mode. |

Apple accuses Elan of attempting to rewrite the claims to require second patterns only in key mode or handwriting mode and but not necessarily in both modes, or to require "third patterns" on the panel for handwriting mode. Apple Br. at 25:16-26:11. Apple goes out of its way to read Elan's construction incorrectly. Why would Elan rewrite its own patent's claim to add a limitation that would make it harder to prove infringement? The word "or" was simply intended to reflect that the invention contemplates use in one mode at a time: the user is either entering alphanumeric data (key mode) or entering handwriting data (handwriting mode). Elan would not object to the following construction to address Apple's misreading:

> Visual information on the panel that delineates "virtual regions," in both key **and** handwriting modes, to convey to the user where to touch to enter data.

In short, this is a non-issue and it appears that the only real dispute as to the '353 patent claims is whether the "patterns" must be static and printed or can be dynamically displayed on a screen. The Court should adopt Elan's constructions and reject Apple's invitation to narrow the claims based on one embodiment in the Specification.

## IV.    U.S. Patent No. 5,764,218

### A.    "Cursor control operation" In Claims 1 and 5 of the '218 Patent Should Be Construed to Mean "Providing of Positional Data to Effect Movement of the Cursor (i.e. Cursor Tracking)."

| Apple's Proposal | Elan's Proposal |
|---|---|
| operations by a cursor controller such as a drag, single-click and multiple-click | providing of positional data to effect movement of the cursor (i.e., cursor tracking operation) |

Unfortunately, Apple seriously misstates Elan's position when it asserts that Elan's position is that cursor control operation is limited to a single operation "based upon one example from one part of one figure of the patent and extrinsic evidence." Apple Br. at 27:23-25. Elan's

1    construction can be shortened to "cursor tracking operation" but this category includes at least

2    three different cursor control operations:  simple cursor movement tracking finger movement,

3    drag, and "click and drag."  Br. at 8:19-9:3.  What these three operations have in common, and

4    what differentiates them from other "control operations" such as "click" and "multiple click" is

5    that in *cursor* control operations, the input device provides positional data to effect the movement

6    of the cursor on a screen.  *Id.* at 8:19-9:8.  Apple's position is that "cursor control function" has

7    the same meaning as "control function" in the specification and includes not only operations in

8    which the cursor moves but also those in which it stands still:  single-click and multiple click.  *See*

9    Apple Br. at 27:18-19 and 28:21-25, citing '218 patent's examples of "control operations."

10          Having misstated Elan's construction as covering only simple tracking rather than

11    operations that provide positional data to move the cursor, Apple proceeds to criticize the

12    narrower construction for being too narrow.  Setting up this straw man instead of arguing against

13    Elan's real position renders much of Apple's argument irrelevant.  For example, Apple boasts of

14    "forcing" Elan's expert, Dr. Dezmelyk, to "concede" that cursor control operations include cursor

15    positioning, dragging, click-and-drag and multi-click-and-drag.  *Id.* at 29:12-16.  Dr. Dezmelyk's

16    testimony is not a concession.  It simply applies Elan's construction, which includes operations

17    that include "providing of positional data to effect movement of the cursor" but not operations that

18    do not move the cursor.  Cursor positioning, dragging, click-and-drag and multi-click-and-drag all

19    involve providing positional data to affect movement of the cursor.

20          As expected, Apple relies on the prosecuting attorney's comments accompanying the

21    amendment of claims 1 and claim 5.  Apple Br. at 28:7-20.  As noted in Elan's opening, however,

22    the Examiner did not adopt the attorney's remarks.  Rather, he reiterated that the claims were

23    allowable because they required the unique third "cursor control operation, namely the "click &

24    drag & stick" operation."  DeBruine Decl., Dkt No. 88, Ex. J at APEL0001276.  As such, this

25    aspect of the prosecution history supports Elan's construction.   The only practical dispute

26    between the parties is whether "cursor control operation" includes operations—click and multi-

27    click—in which the cursor does not move because no positional information is provided.

28          Elan agrees that the purpose of the '218 patent's claimed invention is "to enable an

1  operator to perform with a single touch-sensitive input device numerous *control* operations, such

2  as cursor manipulation, click, multi-click, drag, click-and-drag, and multi-click and drag

3  operations."  But it does not follow from the scope of the entire claimed invention that "*cursor*

4  control operation" in claims 1 and 5 should be construed to include every "control operation" that

5  can be performed with a touch-sensitive input device including clicks that do not affect the

6  position of the cursor on the screen.  Every claim does not cover every aspect of the invention.

7  *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc);

8  *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1248 (Fed. Cir. 2007).  Here,

9  claims 1 and 5 focus on the ability to use contact intervals and gap intervals to distinguish among

10 various operations that all include providing positional data to effect movement of a cursor, rather

11 than on the ability to recognize a click or multiple clicks.  Apple has offered no explanation for

12 why the patentee would use the term "cursor" in the phrase "cursor control element" if the

13 patentee meant the phrase to cover all control operations discussed in the specification.  Indeed,

14 Apple's construction covering "click" and "multiple click" would effectively read "cursor" out of

15 the claim term, in that a user does not "click" until the cursor has already arrived at the desired

16 location on the screen.  Reading a term the patentee chose out of the claim construction is

17 disfavored.  *See Merck & Co v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005).

18 The Court should adopt Elan's proposed construction.

19 **V.    U.S. Patent No. 7,495,659**

20    **A.    "Native Sensor Coordinates Should be Construed to Mean "Coordinates
          Indicating the Absolute Position of an Object on or Near the Touchpad."**
21

| Apple's Proposal | Elan's Proposal |
|---|---|
| the sensor coordinates of a touchpad | Coordinates indicating the absolute position of an object on or near the touchpad |

25    Apple admits in its description of the claimed invention that touch pads are made of

26 sensors that are capable of detecting the proximity of a finger to the pad (Br. at 30:10-12) but puts

27 that aside when attempting to justify its meaningless construction of "native sensor coordinates."

28 Instead, Apple offers a construction that paraphrases the claim language but ignores the entire

1   purpose of the sensors in the claims, which is to detect where on the pad a finger is touching at any

2   given time.[3]  Apple is incorrect when it states that native sensor coordinates are an innate property

3   of the touchpad whether or not a finger ever touches it.  Apple Br. at 31:23-28.

4          Apple's argument relies entirely on the "one embodiment" of a touch sensor shown in Fig.

5   1.  That embodiment does have conductive trace lines – or sensors – arranged in an x-y coordinate

6   system.  The patent makes it very clear, however, that it encompasses many other sensor designs,

7   including resistive sensing and capacitive sensing.  *See* DeBruine Decl., Dkt No. 88, Ex. F at 5:38-

8   45.  Many such touch sensors are composed of a single undifferentiated conductive sheet or two

9   such sheets. Dezmelyk Decl., Dkt No. 89 at ¶¶ 6-14.  In those designs, there are no recognizable

10  "sensor coordinates."  Rather, the sensor covers every possible coordinate.  The coordinate system

11  is therefore imposed by the design of the sensing electronics.  In addition, both parties' experts

12  agree that the coordinates where sensors may be located are not the native location where finger

13  contact is sensed.  Apple's argument otherwise is therefore inconsistent with the patent itself, and

14  with the understanding of those skilled in the art.

15         Moreover, the only use for such coordinates in the claimed invention is as a way that,

16  when a finger is detected, the position at which it is detected can be reported and that information

17  used to produce some corresponding result such as cursor tracking or changing a button state.

18  Apple agrees that "the claim language confirms that it is the configuration of the sensors that

19  represents the information reflecting native sensor coordinates that ultimately allows the controller

20  to determine where the finger or object is."  Apple Br. at 32:11-13.  Apple seems to find some

21  contradiction between sensor signals being "associated" with native sensor coordinates and sensor

22  signals "indicating native sensor coordinates."  *Id*. at 32:13-18.  There is no such contradiction, as

23  Apple made clear during the prosecution of the patent.  The original application's claims used the

24  language "native values of the native sensor coordinates."  DeBruine Decl., Ex. D ('659

25  Application) at 34.  In its April 12, 2007 Amendment After Final Rejection, Apple changed this

26  phrase to its current wording:  "values associated with the native sensor coordinates."  *See* Supp.

27  _____

28         [3] Elan's construction allows for the fact that sensors are often able to detect a finger or other
   object near to, but not physically touching, the surface.

DeBruine Decl., Ex. E at 2.  Apple made clear, however, that it intended no change in the meaning.  Rather, it amended the claim language only "in an attempt to improve grammar and syntax."  *Id.* at 9.  Consistent with the intention that "values associated with the native sensor coordinates" means the same thing as "native values of the native sensor coordinates," in its remaining arguments to the PTO.  Apple simply referred to the claimed invention as having "native values" that are converted and filtered according to the rest of the claims.  *Id.* at 10.  Thus, the values associated with the native sensor coordinates are the coordinate values received from the sensors.  Moreover, the term "coordinates" is meaningless until the raw data from the sensors is interpreted and a location – a set of ***coordinates*** – is determined.  Apple's argument therefore is inconsistent with the patent, the statements made during prosecution, and the technology as understood by those skilled in the art.  On the contrary, it is the association between values and coordinates that allows the controller to interpret signals to indicate the absolute location where a sensor has been triggered and thus a finger detected.

**B.    "Logical Device Units" Should Be Construed To Mean "Discrete User Actuation Zones Representing Areas of the Touch Pad Encompassing Groups of Native Sensor Coordinates."**

| Apple's Proposal | Elan's Proposal |
|---|---|
| one or more actuation zones representing one or more areas of the touch pad encompassing native sensor coordinates | discrete user actuation zones representing areas of the touch pad encompassing groups of native sensor coordinates |

Apple argues that Elan's construction of "logical device units" requiring that actuation zones be discrete not overlapping, is wrong because claim 33, arguably the narrowest claim in the patent, requires "a touch pad whose entire touch sensing surface is divided into a plurality of independent and spatially distinct actuation zones."  Apple Br. at 34:22-28.  While Elan agrees that differences among claims can be useful in understanding the meaning of claim terms, Claim 33 and its dependant claims are different in so many respects that the Court can conclude that they claim a different embodiment of the invention—not that the language "independent and spatially

distinct" in Claim 33 precludes a holding that all actuation zones are "discrete." The '659 patent

relates to both improved touch pads and, more specifically, to media players with touch pads.

DeBruine Decl., Dkt No. 88, Ex. F (Patent) at 1:25-27. The claims asserted against Elan relate to

touch pad systems generally. There is likewise no reason to conclude from these limitations in

Claim 33 that that in all other claims, actuation zones may overlay one another. On the contrary,

the specification repeatedly explains that the touch pad controller "separates" and "divides" the

surface into the virtual actuation zones. *See id.* at 3:26-28 ("a controller that *divides the surface* of

the touchpad into logical device units that represent areas…that can be actuated by the user");

6:67-7:2 ("the controller may *separate the surface* of the touch pad into virtual actuation zones);

*see also* at 7:25-28 ("for example, the touch pad can be *broken up* into larger slices than would

otherwise be obtainable using the native sensor coordinates").

Apple also argues that the whole touch pad can constitute on big logical device unit, based

on the claim language "one or more logical device units associated with the surface of the touch

pad." Apple Br. at 35:2-15. This is consistent with the plain language, but does not reflect the

invention described in the specification. The whole point of the "virtual actuation zones" enabled

by the logical device units is to enable applications in which the user can touch different areas of

the screen to convey different information to produce different results. The touching a zone can

emulate turning a dial to a specific position, pressing a touch button, touching an up, down, left or

right arrow key, etcetera, to allow the user to play a game, select functions or applications from a

menu, or scroll through images, for example. None of these goals can be realized if the whole

touchpad is one actuation zone. In addition, a single logical device unit is inherently a discrete

zone.

The Summary of the Invention explains that the controller "divides the surface of the touch

pad into logical device units that represent areas of the touchpad…." DeBruine Decl., Dkt No. 88,

Ex. F (Patent) at 3:26-28. A much better interpretation of "one or more logical device units" that

is consistent with the descriptions of the invention is that, for some applications, the controller

may divide the surface so that one area is an actuation zone, in which a touch will be interpreted as

input to produce some specific result, while the remainder of the screen is not an actuation zone

1    but background.  Elan's proposed construction keeps "zones" plural to agree with "logical device

2    units" in the claim language, and should be adopted.

3           Apple next argues that not only can a logical device unit be as large as the entire touchpad

4    surface but it can also be as small as a single native sensor coordinate.  Apple Br. at 35:16-28.

5    Apple's sole alleged support for this illogical construction is one sentence in the specification that

6    says the ratio can be as low as "about 1:1 and more particularly about 8:1."  *Id.*, citing the '659

7    patent at 7:17-21 (description of Fig. 2).  This argument demonstrates the danger of reading

8    snippets of the specification into the claims.  If anything, the cited language suggests that the

9    smallest number of sensor coordinate pairs that should be grouped together in a logical device unit

10   is *eight*.  But more importantly, as Apple explains in its "background" but ignores in its argument,

11   the supposed innovation over the prior art claimed in the '659 patent is to make more efficient use

12   of the information generated  at the touchpad than simply reporting coordinates of a touch.  *See*

13   Apple Br. at 30:10-26.  Translating native coordinates into logical device units representing

14   actuation zones, and then communicating to the host device that a specific zone has been actuated,

15   is more efficient and beneficial.  *Id.*  But a touch pad in which each native sensor coordinate

16   corresponds to a single actuation zone would effectively be a touch pad with no logical device

17   units or actuation zones at all.  It would be a touchpad like the prior art touchpads that existed

18   before the patent application, as described in the Background of the Invention.  *See* DeBruine

19   Decl., Dkt No. 88, Ex. F (Patent) at 2:17-29.  Undoubtedly, this explains why the patentee, after

20   explaining that the ratio of native sensor coordinates to virtual actuation zones "may be between

21   about 1024:1 to about 1:1" quickly added in the same breath that "more particularly" the low end

22   is *eight* to one.  Elan's construction, requiring merely that logical device units represent areas of

23   the touchpad encompassing "groups of native sensor coordinates" should be accepted and Apple's

24   attempt to broaden the scope of the claim to include a ratio of 1:1 should be rejected.

25   **VI.    CONCLUSION**

26          For the foregoing reasons, the Court should adopt Elan's constructions.

27

28

1    DATED:  June 2, 2010              Respectfully submitted,

2                                      ALSTON & BIRD LLP

3

4                                      By: _____ /s/ Sean P. DeBruine _____
                                                       Sean P. DeBruine
5
                                       Attorneys for Plaintiff and Counterdefendant
6                                      ELAN MICROELECTRONICS CORPORATION

7    LEGAL02/31930611v1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28