UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ELAN MICROELECTRONICS CORPORATION,<br><br>    Plaintiff,<br><br> v.<br><br>APPLE, INC.,<br><br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: C 09-01531 RS (PSG)<br><br>**ORDER GRANTING-IN-PART PLAINTIFF ELAN MICROELECTRONICS CORPORATION'S MOTION TO COMPEL**<br><br>(Docket No. 249) |

  Plaintiff Elan Microelectronics Corporation ("Elan") moves to compel Defendant Apple, Inc. ("Apple") to produce an internal test tool for inspection by its testifying expert witness. Alternatively, Elan seeks to inspect the tool on demand and without any inspection recording. Apple opposes any production. As for an inspection, although it concedes that an inspection by the expert may be appropriate, Apple nevertheless opposes the motion on the grounds that the entirety of any inspection should be recorded and a copy of the recording produced. On June 7, 2011, the parties appeared for hearing.

  While the parties disagree about Apple's insistence on an inspection that is recorded, they agree that the issue is novel. Neither party was able to present the court with any published opinion offering any guidance. Indeed, the court's own research suggests that, in at least the context of a patent infringement case, no prior opinion has ever addressed the seemingly common question of

when, if ever, a court may require that an expert's interactions with an accused product be recorded for the benefit of an opposing party. Having reviewed the papers and counsels' arguments and considered the particular circumstances surrounding this dispute, the court finds that an inspection and recording as demanded by Apple most appropriately balances Elan's legitimate need for discovery with the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B). Elan's motion to compel is therefore GRANTED, but only IN PART.

## I. BACKGROUND

Elan asserts infringement of various patents that claim simultaneous multi-finger touchpad or touchscreen interactions. Elan specifically alleges that Apple designs, markets and sells computer and consumer electronics products, including the Apple iBook, PowerBook, MacBook, iPhone and iPod Touch ("accused products"), that incorporate and use the same simultaneous multi-finger touchpad or touchscreen interactions claimed in United States Patent Nos. 5,825,352 and 7,274,353 (the "'352 and '353 Patents").

On August 6, 2009, Elan served Apple with the following document requests:

**REQUEST FOR PRODUCTION NO. 20:**

All documents and things concerning the design, research, development, and/or testing of Apple's Products.

**REQUEST FOR PRODUCTION NO. 21:**

Documents concerning or relating to the structure, function, or operation of the Apple Product(s), including, but not limited to specifications, data sheets, drawings, diagrams, circuits, schematics, notebooks, project reports, workbooks, lab books, notes, code, memoranda, test plans, test results, CAD, simulation files, and marketing and sales materials.

On September 8, 2009, Apple responded to the above requests by stating that it would produce "non-privileged documents sufficient to show the design, development, and/or testing of the relevant functionalities in the accused Apple products."

During a hearing held in February 2011 in a parallel infringement action before the United States International Trade Commission ("ITC"), Elan learned that Apple had developed a tool to analyze the functionalities of the accused products. Apple's witness described the capabilities of,

and data captured by, the tool.[1] Elan points out that in post-hearing briefing before the ITC, Apple argued that Elan's expert witness had not based his infringement opinion on the data necessary to confirm infringement, and therefore, the opinion was deficient.

After the hearing at the ITC, on both March 17, 2011 and on March 26, 2011, Elan requested that Apple produce the tool in this case. On April 4, 2011, Apple responded as follows:

> As you know, the [test tool] is a working tool and not simply something we can produce on paper or on a hard drive, especially given its highly proprietary nature. Given your request, however, Apple is willing to consider making the tool available for live testing by Elan's outside counsel or Mr. Dezmelyk, subject to the protective order . . .

Following further efforts by the parties to determine the parameters of any inspection, on May 11, 2011 Elan's outside counsel undertook an initial inspection of the tool. Apple insisted that the initial inspection be subject to the provisions for "Highly Confidential Attorneys' Eyes Only-Source Code" in the Amended Protective Order and limited to Elan's outside counsel only. At the initial inspection, Apple produced the tool for the MacBook Pro product only. Elan's outside counsel requested inspection of the tool to analyze the other accused products as well and Apple stated that it would later respond. Apple failed to respond, however, within a week. Elan then sought to confirm that its expert, whose deposition was scheduled to be held on May 24, 2011 at Apple's counsel's office, could attend a further initial inspection the next day.

Apple replied that the tool could not be produced for inspection by the request deadline of May 25, 2011, because it would need to record the entirety of the expert's inspection, and that it presently lacked the facilities to do so. At the hearing, Apple's counsel confirmed that the recording it contemplated would include either "screen shots" or "screen dumps" of the tool's output as well as videotaping of the expert's manual interactions with the tool that serve as the tool's inputs.

Elan immediately contacted the court and sought a resolution of the instant dispute. The parties appeared telephonically and, based on the arguments presented, the court set a briefing schedule and further hearing.

---

[1] In order to avoid any need to file this order under seal, the Court has avoided quoting any information designated by the parties in their briefs as Confidential or Attorneys' Eyes Only.

## II. LEGAL STANDARDS

A witness retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony must provide a written report, including the following:

- (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
- (ii) ***the facts or data considered by the witness in forming them***;
- (iii) any exhibits that will be used to summarize or support them;
- (iv) the witness's qualifications, including a list of all publications, authored in the previous 10 years;
- (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
- (vi) a statement of the compensation to be paid for the study and testimony in the case.[2]

Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[3] "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[4]

## III. DISCUSSION

**A. Relevance**

Although the intensity of the disagreement reflected in the correspondence, briefing and oral argument would suggest otherwise, the parties ultimately do not dispute that Apple's tool is discoverable. The only real dispute before the court is whether discovery of the tool by Elan's expert should be limited to an inspection further conditioned on Apple's right to record the entirety of the inspection.[5]

---

[2] Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).

[3] *See* Fed. R. Civ. P. 26(b).

[4] *See id.*

[5] The parties' debate also suggested a disagreement about whether Elan's expert is entitled to inspect the tool as it may used with each of the accused products. At oral argument, however, Apple's counsel confirmed that Apple does not object to an inspection of the tool as used with all accused products.

**B.      Form of Discovery: Production v. Recorded Inspection**

Apple justifies its insistence on a recorded inspection by arguing its right under Rule 26(a)(2)(B) to disclosure of any facts and data considered by the expert in forming his opinion. Specifically, Apple notes that "Elan's infringement theory depends critically on the individual placement, pressure, and orientation of fingers on the touch sensor." Apple also notes that Elan's theory and damages claim further depends on the allegation that certain types of contacts are "common." According to Apple, all of this necessarily means that "how" Elan's expert manipulates the tool is crucial to determining the facts that will form the basis of his "inevitable" opinion regarding infringement. Apple insists that, in the absence of a recording of the inspection, there is no other way to make an accurate and objective record and that Elan has not provided any alternative suggestion.

In support of its interpretation of Rule 26(a)(2)(B), Apple points to the advisory committee notes for the 2010 amendment. These notes state that an "expert's testing of material involved in litigation, and notes of any such testing, would not be exempted from discovery by this rule." Apple also points out that while the most recently amended version of Rule 26 includes an exception to "protect communications between the party's attorney and any witnesses required to provide a report under Rule 26(a)(2)(B)," the amended rule further confirms that such communications are not protected from discovery if they "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed."[6]

For its part, Elan notes that under the terms of the amended stipulated protective order, only discovery of source code may be limited to a monitored inspection. Elan further notes that Apple agrees that the tool is not source code.[7] According to Elan, the tool should therefore be produced like all other proprietary documents and discoverable materials, with a "Confidential-Outside Counsel's Eyes Only" designation that will oblige Elan's counsel and expert to protect the tool's confidentiality. As for Apple's insistence on an inspection, Elan insists that Apple's own witnesses can testify to any claimed misuse or misrepresentation of the tool by the Elan expert. Elan also

---

[6]     Fed. R. Civ. P. 26(a)(4)(C).

[7]     *See* Docket No. 62 at 11-12.

ORDER, *page 5*

1  emphasizes the ability of Apple's counsel to cross-examine the expert at deposition to learn the
2  details of his interaction with the tool.[8]

3  Ultimately, Elan's arguments prove too much. In particular, if Elan concedes–as it must–
4  that Apple's attorneys may simply ask Elan's expert any questions they want about his interaction
5  with the tool in a deposition, Elan necessarily concedes the interaction reflects "facts or information
6  considered by the witness" that must be disclosed under Rule 26(a)(2)(B). If this is so, what purpose
7  is served by subjecting such disclosure to the vagaries of memory created by the passage of time
8  between the interaction and the deposition? The court certainly cannot think of any. If the
9  recording itself would impose a restriction on the expert's interaction, perhaps there would be good
10 reason not to allow it. But at least as described by the parties, the recording would not impact the
11 expert's interaction with the tool one bit.[9] Elan might have claimed a particular burden in having its
12 expert "on camera" during the entirety of his inspection, but other than generally claiming
13 inconvenience, it offers no such claim. Under these circumstances, the court finds it appropriate to
14 permit discovery of the tool by an expert witness, but only by a recorded inspection that will allow
15 both parties–to say nothing of the presiding judge and the jury– to understand exactly the facts and
16 information considered by that expert in forming his opinion about the data revealed by the tool.

17 There remains, however, a final question addressed by neither party: when should the
18 recording be disclosed to the defendant? As the court reads Rule 26(a)(2)(B), the facts and
19 information whose disclosure is required by subsection (B) are to be disclosed no earlier than any
20 other facts and information whose disclosure is required. In other words, while Apple's proposal
21 seems to suggest that it should be able to secure access to the recording immediately after the
22 inspection, if not in real time, the court finds that a more appropriate course is for Elan's expert to
23 include a DVD or other copy of the recording with his expert report. Under the current scheduling
24 order, the report of Elan's expert witness, and therefore the copy of the recording, shall be served no

---

[8] While Elan vaguely suggests that a recorded inspection will hinder its trial preparation efforts, it offers no details of the precise burden it will confront from such an inspection.

[9] The court is not oblivious to the notion that a precise recording of his entire interaction with the tool will motivate the expert and Elan's counsel to alter the expert's approach to the tool to minimize any interaction that will undermine Apple's challenge to his opinion in deposition and ultimately at trial. But the burden of such an "observation bias" is a price that Apple must necessarily pay in exchange for the disclosure it seeks.

later than September 2, 2011.

## IV.  CONCLUSION

For the foregoing reasons, Elan's motion to compel is GRANTED, but only in part.

Apple shall produce the disputed internal test tool for inspection by Elan's expert at its attorneys' office in Boston, Massachusetts.  This inspection shall commence no later than June 17, 2011.  The court leaves to the parties the details of the particular days and hours of the inspection.  The court will note, however, that it will not tolerate any unreasonable efforts by Apple to restrict either the duration or the further circumstances of the inspection at its attorneys' offices.  The court further notes that it will not tolerate any objection by Apple to similar recordings of any of its own testifying experts' interactions with the same tool.

IT IS SO ORDERED.

Dated:   June 8, 2011

*[signature: Paul S. Grewal]*
PAUL S. GREWAL
United States Magistrate Judge