1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

12 | ELAN MICROELECTRONICS CORPORATION, ) Case No.: C 09-01531 RS (PSG)

) **ORDER GRANTING-IN-PART**
13 | Plaintiff, ) **DEFENDANT APPLE, INC.'S**
) **MOTIONS TO COMPEL**
v. )
14 | )
APPLE, INC., ) **(Docket Nos. 313, 336)**
15 | )
Defendant. )
16 | _____ )

17    Defendant Apple, Inc. ("Apple") moves to compel (1) discovery relating to Elan

18 | Microelectronics Corporation's ("Elan") sales in the United States; (2) documents withheld by Elan

19 | on the basis of privilege; and (3) inventor depositions.  Separately, Apple moves to compel

20 | depositions of Elan's current employees in the Northern District of California.  Elan opposes both

21 | motions.  On July 5, 2011, the parties appeared for hearing.  Having reviewed the papers and

22 | considered the arguments of counsel, Apple's motions to compel are GRANTED-IN-PART.

23                          **I.  BACKGROUND**

24    Elan asserts infringement of two patents that relate to touch-sensitive electronic input devices

25 | and are claimed in United States Patent Nos. 5,825,352 and 7,274,353 (the "'352 and '353 Patents").

26 | The '352 Patent claims simultaneous multi-finger touchpad or touchscreen interactions and the '353

27 | Patent claims touchpad functions in two of three input modes (key, handwriting, and mouse).  Elan

28 | alleges that Apple designs, markets and sells computer and consumer electronics products, including

the Apple iBook, PowerBook, MacBook, iPhone and iPod Touch ("accused products"), that incorporate and use Elan's same simultaneous multi-finger touchpad or touchscreen interactions and touchpad functions.

Apple counterclaims, alleging infringement of U.S. Patent No. 7,495,659 and U.S. Patent No. 5,764,218.  (the "'659 and '218 Patents") by Elan touch-sensitive input devices used in products imported into, offered for sale in and sold in the United States.  The '218 Patent expands the usability of touch-sensitive devices by teaching methods for simulating mechanical buttons using the touchpad alone and the '659 Patent enhances the efficiency of touch-sensitive devices through a method of grouping areas of the touchpad into zones that can be actuated by user.

Approximately one year after this action began, Elan filed a complaint with the U.S. International Trade Commission alleging that Apple products infringed the '352 Patent and requesting that the Apple products be barred from importation into the United States.  ("ITC Investigation").  An evidentiary hearing was held in February 2011, and on April 29, 2011, the Chief Administrative Law Judge issued a final initial determination finding that none of Apple's current products infringe the '352 Patent.

Fact discovery is scheduled to close on October 2, 2011.[1]

### III.  LEGAL STANDARDS

**A.     Discovery Generally**

Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[2]  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[3]

**B.     Attorney-Client Privilege and Work Product Doctrine**

The party asserting the privilege bears the burden of showing that it applies.[4]  The attorney-

---

[1]     *See* Docket No. 380.

[2]     *See* Fed. R. Civ. P. 26(b).

[3]     *See id.*

[4]     *See In re Grand Jury Investigation,* 974 F.2d 1068, 1070-71 (9th Cir. 1992).

client privilege is strictly construed.[5]  The attorney-client privilege protects confidential communications between a client and an attorney from disclosure and the party asserting the privilege must establish each element of the following eight-part test: "(1) where legal advice of any kind is sought; (2) from a legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal adviser; and (8) unless the protection be waived."[6]

Under ordinary circumstances, a privilege log should be provided that identifies and describes the documents in sufficient detail to "enable other parties to assess the claim."[7]

The work product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation."[8]  The party seeking work product protection must show that the document was (1) prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative.[9]  The doctrine provides an attorney working on a case "with a certain degree of privacy" so that he may "prepare his legal theories and plan his strategy without undue and needless interference."[10]  Like the attorney-client privilege, work product protection can be waived.[11]

The common interest doctrine, also known as the joint defense privilege, is a narrow exception that provides that disclosure to a third party does not waive privilege or work product protection where the third party shares a common interest with the disclosing party that is adverse to that of the party seeking the discovery.[12]  The common interest privilege applies where "(1) the

---

[5]     See United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009).

[6]     United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010).

[7]     Fed. R. Civ. P. 26(b)(5)(A)(ii).

[8]     United States v. Richey, 632 F.3d 559, 567 (9th Cir. 2011).

[9]     See id.

[10]    Hickman v. Taylor, 329 U.S. 495, 511 (1947).

[11]    See Hernandez v. Tanninen, 604 F.3d 1095, 1100 (9th Cir. 2010) (stating that "both [attorney-client and work product] privileges may be waived," and finding waiver).

[12]    See U.S. v. Bergonzi, 216 F.R.D. 487, 495 (N.D. Cal. 2003).

communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived."[13]   The common interest must be a legal interest.[14]  It "does not extend to communications about a joint business strategy that happens to include a concern about litigation."[15]  Generally, as the alternative name "joint defense privilege" suggests, the doctrine applies to cases where "allied lawyers and clients" work together in prosecuting or defending a lawsuit so that they may exchange information among themselves without waving the privilege.[16]

## IV. DISCUSSION

### A.     Discovery Related to Elan's U.S. Sales

Apple first moves to compel further responses to interrogatory nos. 13, 15, and 17.  The interrogatories seek information regarding the presence of accused Elan products in the United States.  For example, Apple seeks details regarding whether the accused products have arrived in this country through direct sales to domestic customers or through foreign sales to third parties, who then import the products into the United States.  Apple also wants Elan to disclose what it knows about the third-party products sold in the United States that incorporate Elan's touchpad and touchscreen components.  Apple also seeks specific data regarding the quantities of these sales, as well as how Elan develops, markets and sells both the accused and third-party products in this country.  Apple explains that the information sought is relevant to its infringement case against Elan on theories of inducement and contributory infringement.

Elan does not dispute that its touchpad and touchscreen components are sold to OEM manufacturers in Asia.  These manufacturers then incorporate them into downstream products such as smartphones and notebook computers that are ultimately imported into and sold in the United States.  In fact, in a declaration in a separate suit in the District of Nevada, Elan marketing director

---

[13]     *See Pulse Eng'g, Inc. v. Mascon, Inc.,* Case No. 08-595 JM (AJB), 2009 WL 3234177, at *3 (S.D. Cal. Oct. 2, 2009).

[14]     *See Walsh v. Northrup Grumman,* 165 F.R.D. 16, 18 (E.D.N.Y. 1996).

[15]     *Id.*

[16]     *United States v. Massachusetts Institute of Technology,* 129 F.3d 96, 100 (2d Cir. 1999).

1   Ian Chung explains as much.  In a declaration in the ITC proceeding, Elan's Chairman and General

2   Manager I.H. Yeh does the same.  Elan further admits that it promotes its products in the United

3   States and provides support to end customers in the United States.

4   But even as it concedes the relevance of the information requested, Elan denies that its

5   failure to answer Apple's specific demands falls short of its obligation under Rule 33.  Elan claims

6   that it has conducted a reasonable internal investigation of its sales and finance database and that this

7   investigation has yielded little or no specific information about such Apple demands as the volume

8   of accused products sold in the United States by third parties or the particular commercial model

9   names of the final products sold in the United States.  This is not surprising, says Elan, because

10  Elan's main promotional efforts are focused in Asia, where the vast majority of its vendors and

11  direct customers are located.  At best, Elan argues, the information in its possession, custody, or

12  control about such matters is incomplete, informal and anecdotal, and nothing in Rule 33 compels

13  Elan to consume the resources necessary to gather arguably relevant snippets from every nook and

14  cranny of the company.

15  Elan's protests suggest a misunderstanding of its obligations.  Elan is quite right that it need

16  not undertake an extraordinary, let alone herculean, investigation in response to Apple's demands.

17  At the same time, no matter how incomplete, informal or anecdotal, if Elan's reasonable

18  investigation has yielded information that is responsive to Apple's interrogatories, Rule 33 requires

19  that Elan put that information in one or more sworn interrogatory responses.  This reasonable

20  investigation should include, at a minimum, interviews with relevant employees such as Mr. Chung

21  and Mr. Yeh, interviews with employees involved in Elan's collaborations with brand companies

22  selling in the United States, review of its sales presentations and all levels of its sales and finance

23  database, and an analysis of its source code, all of which have been shown to be likely to reveal

24  information that is nowhere to be found in Elan's current responses.  It is simply no excuse not to

25  provide a sworn answer to any one of Apple's legitimate demands simply because Elan is unable to

26  answer completely all of them.[17]

27

28      [17]      In its opposition papers, Elan acknowledges this obligation when it declares that "Elan
        has at all times represented to Apple that *it would produce all information in its possession.*"  *See*
        Docket No. 296 at 2 (emphasis added).  A pledge, however, is not a substitute to a sworn answer

1    Accordingly, no later than August 29, 2011, Elan shall serve supplemental interrogatory

2    responses "fully in writing under oath"[18] that provide whatever information has been identified after

3    its reasonable investigation.

4    **B.    Documents Withheld on the Basis of Privilege**

5    Apple next moves to compel the production of documents withheld by Elan as privileged,

6    including redacted sales presentations prepared for and/or given to third parties, and summaries of

7    the Apple patents-in-suit prepared by an Elan employee who was acting under the direction or

8    supervision of an attorney.  Based on the Elan privilege log available prior to filing its motion,

9    Apple  contends that these withheld documents fall into three categories: (1) sales presentations

10   prepared for and/or given to third parties redacted on the basis of work product and/or "common

11   interest privilege;" (2) documents withheld on the basis of common interest privilege but without

12   any identification of the matter of alleged common legal interest or any facts showing that the

13   allegedly privileged communication had a primarily legal, as opposed to business, purpose; and (3)

14   communications with Elan's "legal" department withheld on the basis of attorney-client privilege

15   even though the department does not include any licensed attorneys.[19]

16   **1.    Sales Presentations to Third-Parties**

17   Elan has produced certain sales presentations that have been substantially redacted.  The

18   sales presentations were directed to the sales and marketing of Elan's products but include redacted

19   portions that include information about this suit and the patents-in-suit.  The disputed portions were

20   prepared by Wayne Chang, who is not an attorney.  Mr. Yeh testified at deposition that the

21   presentations were given to companies such as HTC, ASUS, Acer, and Samsung and were designed

22   ───────────────

23   supplied by the deadline set forth in the Federal Rules of Civil Procedure.

24        [18]    Fed. R. Civ. P. 33(b)(3).

25        [19]    The number of documents in each of these categories has evolved, even during the course
     of Apple's motion and its consideration by the court.  In July 2010, Elan withheld approximately 1,250-
26   1,300 documents on the basis of privilege.  In October 2010, Elan revised its privilege logs and withheld
     approximately 900 documents.  On July 1, 2011 (the Friday before the hearing), Elan again revised its
27   privilege logs to reflect that it was withholding only 377 documents on the basis of privilege.

28        In addition, whereas certain log entries had previously reflected only that the communication
     at issue involved Elan's legal department and/or counsel, those same entries now reflect that the
     communication was made upon the instruction or in conjunction with U.S. counsel.

1   to "sell and market Elan products"[20] Mr. Yeh also testified that no attorneys from Elan attended any

2   of these presentations.[21]

3          Even as it acknowledges that the presentations were given to the third parties without any

4   lawyers present, Elan justifies its redactions as follows.  From 2005 to 2008, Elan was engaged in

5   litigation with Synaptics, Inc. ("Synaptics") and since 2009, with Apple.  Elan explains that both of

6   these actions included counterclaims alleging that it infringed certain patents.  Because Elan is a

7   component supplier to many downstream product makers, those downstream customers were faced

8   with the prospect that Synaptics and Apple would assert similar patent infringement claims against

9   them.  As a result of this concern, and based on an understanding with its customers that the

10  communications were to be kept confidential and subject to the common interest privilege, Elan

11  included in its presentations analyses of the various patents-in-suit for its customers who sought

12  them.  But for this understanding and the intent not to waive the privilege or work product protection

13  for those documents, Elan would not have provided this information to a limited group of its key

14  customers.[22]

15         Elan's justification falls far short of the mark.  While the common interest privilege has been

16  recognized in limited circumstances where there is "a common legal interest because of anticipated

17  joint litigation,"[23] here Elan has offered nothing beyond mere *post hoc* rationalizations that it or its

18  customers anticipated being drawn into a joint suit.  Despite representation by sophisticated U.S.

19  legal counsel, Elan did not execute or even draft any written joint defense or common interest

20  agreement.  While such a writing may not always be required, Elan also has not shown that the

21  presentations disclosed that which the common interest privilege was designed to protect – "a pre-

22  existing privileged document"[24] shared among "allied lawyers and clients – who are working

23

24         [20]      *See* Docket No. 336 at 8.

25         [21]      *See id.*

26         [22]      *Cf. Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 115 F.R.D. 308. 309 (N.D. Cal. 1987).

27         [23]      *Nidec Corp. v. Victor Co.,* 249 F.R.D. 575, 579 (N.D. Cal. 2007).

28         [24]      *In re Juniper Networks, Inc. Sec. Litig.,* Nos. 06-4327 JW (PVT), 08-246 JW (PVT),
2009 LEXIS 118859, at *10-11 (N.D. Cal. Dec. 9, 2009).

together in prosecuting or defending a lawsuit or in certain other legal transaction."[25] The documents

at issue are not described as pre-existing, and there was no suit or even threat of suit against any of

the parties to whom the presentations were delivered.  Nor were any of the transactions "legal" in

the sense appropriate to the application of the privilege.[26]  As Mr. Yeh explained in his deposition,

no lawyers were present at any of the presentations and Elan's purpose in delivering the

presentations was not to discuss legal strategy.  Its purpose was in line with what one would expect

from salespeople: to sell.  Finally, to the extent these presentations served dual purposes, legal and

non-legal, the record offers no contemporaneous suggestion that Elan would have created the

presentations differently in the absence of prospective litigation.[27]  Under these circumstances, Elan's

claim to the common interest privilege for its redactions is not warranted.  Accordingly, no later than

August 29, 2011, Elan shall produce the documents at issue as requested.[28]

### 2.    Other Documents

In addition to the sales presentations discussed above, Elan has asserted the common interest

privilege for various non-sales communications with third parties.  As with the sales presentations,

Elan points to its litigation with Synaptics and this litigation with Apple to justify its disclosures to

downstream customers who faced a threat of suit.

Apple identifies a number of flaws with Elan's claim.  First, according to Elan's own

privilege log, no Elan attorneys are copied on any email communications.  Second, Elan fails to

identify the entity with whom it allegedly sharing the common legal interest.  Third, the log does not

identify the alleged matter of common legal interest.

Other than supplying a new log on the eve of the hearing, Elan does not explain the alleged

deficiencies in the privilege log that Apple raises in its papers.  Instead, Elan urges that, to the extent

---

[25]    *United States v. Massachusetts Institute of Technology,* 129 F.3d 681, 686 (1st Cir. 1997).

[26]    *Cf. Walsh v. Northrup Grunman,* 105 F.R.D. 16, 18 (E.D.N.Y. 1996) (noting that common interest doctrine "does not extend to communications about joint business strategy that happens to include a concern about litigation.").

[27]    *Cf. United States v. Richey,* 632 F.3d 559, 568 (9th Cir. 2011).

[28]    The court further declines Elan's invitation to hold generally that its production does not constitute a waiver.  Any waiver claims in the future will be considered on a case-by-case basis.

1   that the court finds its latest logs insufficient to establish that a common interest applies, the court

2   should conduct an *in camera* inspection of the documents at-issue prior to making a final ruling.

3   But an *in camera* inspection by the court in the twilight of fact discovery is not an appropriate

4   substitute for Elan's compliance with its duty – before motion practice ensues – to provide enough

5   information to determine whether the privilege claim is justified.  This duty to provide sufficient

6   information before court intervention is no mere formality.  It is essential to the proper and prompt

7   resolution of hotly contested privilege claims.[29]   Because Elan does not justify its failure to provide

8   the required information in a timely manner, Elan's objections are deemed waived.  No later than

9   August 29, 2011, Elan shall produce the documents as requested.

10          **3.      Elan's Communications with the In-House IPR Department**

11          Before Apple filed its motion, Elan claimed privilege for communications to and from its in-

12   house intellectual property rights (IPR) department even though the communications were not

13   directed by, involving, or supervised by any attorney.  Elan's IPR department does not employ any

14   attorneys.

15          As noted above, after Apple filed its motion, on July 1, 2011, Elan revised its privilege logs

16   to reflect that all communications involving the in-house IPR department previously withheld on the

17   basis of privilege also included an unnamed U.S. counsel.  According to Elan, these revisions render

18   any issue regarding whether privilege may be claimed by an individual, who alleges to be the

19   functional equivalent of in-house counsel in the United States but is not actually an attorney in

20   Taiwan, moot.

21          Apple nevertheless urges that based on the last-minute timing of the revisions to the privilege

22   logs and the wholesale changes to the descriptions of privileged documents, the court ought to view

23   Elan's revisions with skepticism and conduct an *in camera* inspection of those documents.  At the

24   very least, Apple notes that the recent revisions remain deficient because they fail to identify by

25   name even a single attorney who was involved in or that requested any of the disputed

---

27 [29]      Elan complains that Apple only raised issues regarding its logs just before it filed its
28   motion, thereby depriving Elan an opportunity to revise its logs earlier.  This complaint, however,
     misapprehends the burden its claiming privilege in a timely manner.  A log that sufficiently justifies a
     claim of privilege should be served when the claim is made, not only after a motion to the court is
     threatened.

1   communications that Elan continues to withhold.

2       Even if the revised logs were timely, which they are not, the court agrees that Elan's logs are

3   deficient because they do not permit Apple or the court to adequately assess the claim of privilege.

4   The individual entries on Elan's privilege logs fail even to name the U.S. counsel who was involved

5   or directed the specific communications for which privilege is claimed.  Without that information,

6   there is no basis for which to determine whether assertion of the privilege is proper.  Accordingly,

7   Elan's objections are deemed waived and, no later than August 29, 2011, Elan shall produce the

8   documents as requested.

9   **C.       Named Inventor Depositions**

10      During the July 5 hearing, Elan confirmed that none of the four named inventors (Yen-Chang

11  Chiu, Ting-Hao Yeh, Yung Lieh Chien, and Shih-Chi Lin) on Elan's '353 Patent would testify at

12  trial.  Because none of the named inventors will testify at trial, Apple stated that it would not seek to

13  depose them.  Accordingly, Apple's motion as to these depositions on Elan's '353 Patent is now

14  moot.

15  **D.       Deposition Location for Elan Employees**

16      Elan agreed to make its employees available for deposition in the Northern District of

17  California.  The parties memorialized their agreement in both the initial case management and

18  further case management statements.  Both statements provide as follows:

19      The parties agreed that the named inventors and employees of the parties that do not
        reside in the United States will be made voluntarily available for deposition in the
20      Northern District of California without service of foreign process except as so
        identified to the opposing party no later than September 18, 2009.

21
22      Pursuant to the parties' agreement above, Apple moves to compel the depositions of current

23  Elan employees here.  Apple argues that while the majority of Elan's employees may be located in

24  Taiwan, this is the district where Elan chose to initiate suit.  Moreover, during the parties' meet and

25  confer and with the exception of specific inventors and employees that Elan was to identify prior to

26  September 18, 2009, Elan agreed to do so.  Apple notes that prior to the September 18, 2009

27  deadline, Elan identified no exceptions.

28      Elan responds that Apple seeks to depose at least nine, and possibly more, of its employees

in the Northern District of California just before the close of fact discovery.  Elan also states that

1   Apple seeks to depose certain witnesses who have already been deposed in the United States by

2   Apple in the parallel ITC action.  Elan states that Apple would not be unduly burdened or prejudiced

3   by conducting these same depositions in Taiwan, and that a more reasonable arrangement should be

4   considered.

5          The parties' agreement unequivocally states that they agree to make available for deposition

6   in the Northern District of California their employees that do not reside in the United States.  Indeed,

7   Elan made no exceptions prior to the September 18, 2009 deadline.  There are no qualifications in

8   the agreement (1) that the depositions be limited to certain claims of the party, (2) that those

9   employees that previously testified for the parallel ITC hearing would be excepted, (3) that the

10  depositions would be conducted via videoconference, (4) that duplicative witnesses on similar topics

11  would be excluded or (5) that the parties would share the travel expenses.  Additionally, Elan re-

12  affirmed the (broad and unqualified) agreement in the further case management statement as

13  recently as January 20, 2011.  At the eleventh hour, and without having contemplated this

14  consequence when the agreement was made, Elan cannot now be relieved of its obligations under

15  the parties' agreement.  Accordingly, Apple's motion to compel the depositions of Elan's employees

16  is granted.  Notwithstanding this ruling, however, the undersigned encourages the parties to be

17  reasonable in scheduling and coordinating these depositions.

18                          **V.  CONCLUSION**

19          Apple's motions to compel are GRANTED-IN-PART.

20      (1)    Elan shall provide further responses to interrogatory nos. 13, 15 and 17 no later than
               August 29, 2011.
21

22      (2)    Elan shall produce the documents specified above no later than August 29, 2011.

23      (3)    Elan shall make available its current employees for depositions in the Northern
               District of California no later than September 12, 2011.

24          IT IS SO ORDERED.

25  Dated:  August 8, 2011

26                          _____
                            PAUL S. GREWAL
27                          United States Magistrate Judge

28